**STATE of Minnesota, Respondent,**

v.

**Jabaris Curt BOLDMAN, Appellant.**

**No. A10–1235.**

Supreme Court of Minnesota.

April 18, 2012.

Lori Swanson, Attorney General, and John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant Ramsey County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Jessica Merz Godes, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

DIETZEN, Justice.

Appellant Jabaris Curt Boldman was found guilty by a jury of first-degree felony murder and second-degree intentional murder for the shooting death of Vernon Cafle, which death occurred on January 18, 2009, in St. Paul, Minnesota. The district court entered judgment of conviction for first-degree felony murder and imposed a life sentence. On direct appeal, appellant argues that the evidence is not sufficient to support the convictions, that the state violated its discovery obligations, and therefore his convictions should be reversed. Because we conclude that the evidence was not sufficient to support the first-degree felony murder conviction but was sufficient to support a second-degree murder conviction, and that the alleged discovery violation was harmless, we vacate appellant's conviction for first-degree felony murder and remand to the district court to enter a judgment of conviction and impose sentence on the second-degree murder charge.

On the evening of January 18, 2009, St. Paul police responded to a 911 call reporting a shooting in St. Paul at the residence of Vernon Cafle. On arrival, paramedics discovered Cafle's body on the porch of his home. Police searched Cafle's residence and discovered loose marijuana on the kitchen floor near the door leading to the porch, and a loaded .357 revolver in the basement. The responding officers interviewed the witnesses at the police station.

The bullets recovered from Cafle's body were consistent with a .22 caliber weapon. Despite a thorough search of the crime scene, no .22 caliber shell casings were recovered. The medical examiner conducted an autopsy, and concluded that Cafle died of two gunshot wounds; one bullet entered the back of Cafle's head, traveling down his neck and into his right chest cavity, and the other bullet entered his low back near his tailbone. Neither gunpowder burns nor soot were found near the wounds or on Cafle's clothing, indicating the gunshot took place between at least several inches and possibly several feet away from Cafle's body. Cafle had a blood alcohol concentration of .218, but there were no signs of drug use.

When police arrested appellant, he stated: "Let's get this over with, I'm the guy you are after." Appellant later told police

he was at his girlfriend's house when the victim was shot. Police testified that appellant had a "relatively fresh scratch on his right forearm" of less than half an inch and small bruises on his right elbow and left shin, but did not note any injuries to his hands.

A complaint was filed charging appellant with one count of second-degree intentional murder in violation of Minn.Stat. § 609.19, subd. 1(1) (2010). Later, a grand jury indicted appellant on one count of first-degree murder while committing or attempting to commit the sale of a controlled substance in violation of Minn.Stat. § 609.185(a)(3) (2010).

Before trial, appellant moved to dismiss the indictment for first-degree murder on the ground that the felony-murder statute defines the crime as an intentional murder while committing or attempting to commit an unlawful *sale* of a controlled substance. Appellant argued that because he was the buyer—not the seller—of the marijuana, the felony-murder statute was not applicable and therefore the charge should be dismissed. The district court denied appellant's motion to dismiss the indictment and the matter proceeded to trial.

At trial, the State presented evidence that the murder arose out of a failed drug transaction involving appellant and Cafle. On the day of the murder, Cafle and his live-in girlfriend, K.A., hosted friends and family at Cafle's house. They played cards and dominos, watched TV, drank alcohol, and some smoked marijuana. Earlier, appellant spoke with K.A.'s niece, who arranged for appellant to purchase marijuana from Cafle later that day. Appellant arrived at Cafle's house around 10:00 that night in a car driven by appellant's friend, A.P., and occupied by appellant's brother. The drug transaction occurred on the back porch of Cafle's house. Appellant and Cafle discussed the weight of the marijuana, and Cafle asked one of his houseguests, D.A., to get a scale. When D.A. returned with the scale, he became suspicious when he saw appellant trying to "see who else was in the house," which caused D.A. to retrieve a pistol. On his return, D.A. heard Cafle call out D.A.'s name in a "panicky tone" and a couple of "pops," and then found Cafle's body on the back porch.

A.P. and appellant's brother both testified for the State. Both testified that they saw appellant and Cafle fighting on the steps of the back porch. A.P. testified that he saw appellant standing next to Cafle. A.P. then saw Cafle slide down the stairs on his stomach and a "fireball" coming from appellant's hand. Appellant's brother heard two gunshots and then saw Cafle fall to the ground but did not know who fired the shots.

A.P. testified that appellant, appellant's brother, and A.P. left the scene immediately in A.P.'s car, that appellant stated he almost shot the victim in the face, and then said, "I didn't see you and you ain't seen me." Appellant's brother testified that there was no conversation among A.P., appellant, and appellant's brother after leaving the scene.

Appellant made several telephone calls while he was in jail. During one telephone call with A.P., appellant told A.P. that he should testify that Cafle charged appellant with a gun. In a second telephone call, appellant suggested that A.P. avoid the trial and flee to Ohio. Appellant's brother testified that appellant called him before trial and told him not to testify. Recordings of the telephone calls were played for the jury.

At the close of trial, appellant requested that the district court give the jury a self-defense instruction. The court declined to give the instruction. The jury returned

guilty verdicts on both counts and the court imposed a life sentence on the first-degree felony murder conviction.

## I.

Appellant raises three arguments on appeal. First, appellant argues that his first-degree felony murder conviction must be reversed because the predicate felony for the felony-murder offense required that appellant unlawfully sell a controlled substance and the evidence established that appellant purchased, but did not sell, marijuana at the time of Cafle's death.

Minnesota Statutes § 609.185(a)(3) (2010) provides, among other things, that whoever "causes the death of a human being with intent to effect the death of the person or another" while committing a felony involving the unlawful sale of a controlled substance, is guilty of first-degree murder. The unlawful sale of marijuana is a predicate felony for first-degree felony murder under Minn.Stat. § 609.185(a)(3). See Minn.Stat. §§ 152.025, subd. 1(a)(1); 152.01, subd. 15a(1) (2010). At issue is the meaning of the language in the felony-murder statute, "involving the unlawful sale of a controlled substance." Minn.Stat. § 609.185(a)(3). Specifically, this case presents the issue of whether the statute applies to a defendant who is a purchaser involved in an unlawful drug transaction.

▬ The State concedes that appellant should not have been convicted of first-degree felony murder, and therefore argues that we need not resolve the question of the meaning of the statute. Generally, the court will accept a concession made by the State when the concession is reasonably supported by the record. See, e.g., State v. Thompson, 578 N.W.2d 734, 742 (Minn.1998). Here, the record supports the State's concession that the evidence is not sufficient to support the first-degree felony murder conviction. Specifi-

cally, no marijuana was recovered from appellant, and the State's evidence did not prove beyond a reasonable doubt that appellant committed a felony violation under Minn.Stat. § 609.185(a)(3). Accordingly, we vacate appellant's conviction for first-degree felony murder. As a result, we need not, and therefore decline to, determine the meaning of "involving the unlawful sale of a controlled substance" in the felony-murder statute or resolve the issues raised by appellant regarding the jury instructions.

## II.

Appellant next argues that the evidence was not sufficient to convict him of second-degree intentional murder. Appellant argues that the shooting and resulting death of Cafle was accidental or in self-defense.

▬ When evaluating the sufficiency of the evidence, we carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted. State v. Al–Naseer, 788 N.W.2d 469, 473 (Minn.2010); Davis v. State, 595 N.W.2d 520, 525 (Minn.1999). We view the evidence in the light most favorable to the verdict, and assume that the fact-finder disbelieved any evidence that conflicted with the verdict. State v. Palmer, 803 N.W.2d 727, 733 (Minn.2011); State v. Leake, 699 N.W.2d 312, 319 (Minn. 2005). The verdict will not be overturned if the fact-finder, upon application of the presumption of innocence and the State's burden of proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense. Bernhardt v. State, 684 N.W.2d 465, 476–77 (Minn.2004).

The elements of second-degree intentional murder under Minn.Stat. § 609.19, subd. 1(1) require that the State prove that the death of the victim took place on or about January 18, 2009, in Ramsey County, that appellant caused the death of the victim, and that appellant acted with the intent to kill the victim. Appellant argues that the evidence is not sufficient to prove beyond a reasonable doubt that he acted with the intent to kill the victim. Specifically, appellant argues that the shooting, and the resulting death of Cafle, was either accidental or in self-defense.

■ The evidence of appellant's intent to kill Cafle was largely circumstantial. "When a conviction is based on circumstantial evidence, we use a two-step test to evaluate the sufficiency of the evidence." *State v. Matthews,* 800 N.W.2d 629, 635 (Minn.2011). First, we identify the circumstances proved and, in doing so, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proven by the State. *Id.* (citing *State v. Andersen,* 784 N.W.2d 320, 329 (Minn.2010)). Second, we examine independently the reasonable inferences that might be drawn from the circumstances proved. *Id.* We give no deference to the fact-finder's choice between reasonable inferences. *Id.* To sustain a conviction based on circumstantial evidence, the reasonable inferences that can be drawn from the circumstances proved as a whole must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt. *Andersen,* 784 N.W.2d at 332 (citing *State v. Curtis,* 295 N.W.2d 253, 258 (Minn.1980)). We will not overturn a conviction based on circumstantial evidence on mere conjecture. *State v. Lahue,* 585 N.W.2d 785, 789 (Minn.1998).

■ Turning to the circumstances proved, it is undisputed that appellant traveled with A.P. and appellant's brother in A.P.'s car to Cafle's house to buy marijuana from Cafle. Both A.P. and appellant's brother saw Cafle and appellant engaged in a physical fight on the landing immediately adjacent to the enclosed back porch area, and then heard two gunshots. A.P. saw a "fireball" emanate from appellant's hand directed toward Cafle, and then saw Cafle slide on his stomach down the steps of the back porch. Cafle was shot twice in the back from a distance of one to two feet. One bullet entered the back of his head and the other entered near his tailbone. Both bullets traveled back to front, at a downward 45–degree angle. Appellant, appellant's brother, and A.P. fled the scene in A.P.'s car. Appellant told A.P., "I didn't see you and you ain't seen me." When appellant was arrested the next day, he told the police, "Let's get this over with, I'm the guy you are after." Appellant made several phone calls from jail to various witnesses and friends. He complained to his girlfriend that she did not support his alibi that he was at her house the whole day. Appellant told his brother not to testify at trial. Similarly, appellant told A.P. not to testify at trial, but that if he did testify, to say that Cafle charged appellant with a gun.

Having established the circumstances proved, the second step of the *Andersen* analysis is to examine independently the reasonable inferences that might be drawn from the circumstances proved. *Matthews,* 800 N.W.2d at 635. We conclude that the circumstances proved support a reasonable inference that appellant intended to kill Cafle. Briefly, these facts and inferences include that Cafle was shot twice in the back at a downward 45–degree angle. The reasonable inference is that appellant intentionally shot Cafle in the back of the head, and in the low back near

the tailbone. Second, the police extensively searched the area the night of the shooting, but no .22–caliber shell casings were recovered. The reasonable inference is that the murder weapon was a revolver and not a semi-automatic handgun. Unlike a revolver, a semi-automatic handgun ejects shell casings. Third, a revolver requires that the shooter pull the trigger for each shot fired. The reasonable inference is that each shot was fired intentionally. Fourth, appellant's conduct after the shooting—directing witnesses on how to testify and not describing the shooting as an accident in the jailhouse calls—is consistent with an intentional shooting. Thus, the circumstances proved support a reasonable inference that appellant intended to kill Cafle.

Next, we consider whether the circumstances proved support a rational hypothesis other than that appellant acted with intent to kill Cafle. Appellant argues it is equally rational that Cafle was killed accidentally during a physical struggle between Cafle and appellant for control of a gun. Appellant's theory, however, that he accidentally shot Cafle in the back during a physical struggle is not rational. It may be possible to conclude that one shot was accidentally fired during a physical struggle. But it is not rational to conclude that appellant accidentally shot the victim twice in the back at point-blank range with a revolver.

■ Appellant next argues that the circumstances proved support a reasonable inference that the shooting of Cafle was justified by self-defense. To establish a self-defense claim, appellant must establish that he reasonably feared great bodily harm or death and that the use of force to prevent such harm was reasonable. *See State v. Glowacki,* 630 N.W.2d 392, 399 (Minn.2001). Appellant relies in part on a phone call with A.P. to support his argument that Cafle charged him, and he shot in self-defense. In the telephone call at issue, appellant began the conversation by saying to A.P., "And this is how we gone [sic] play it." He followed up by saying, "Say your same story you been sayin' *except* that when we was on the porch, you seen me walkin' away and dude chargin' me with a gun." (emphasis added). However, appellant's factual claim that Cafle charged appellant with a gun is not part of the circumstances proved because under our standard of review, we presume that the jury resolved any questions of fact in favor of the State. But even if appellant is correct that his call to A.P. is consistent with self-defense, the circumstances are not evaluated individually; rather, circumstances must be evaluated as a part of the whole evidentiary picture. *See Andersen,* 784 N.W.2d at 332. Specifically, the court must evaluate whether the circumstances proved " 'are consistent with guilt and inconsistent, *on the whole,* with any reasonable hypothesis of innocence.' " *Id.* (quoting *State v. Curtis,* 295 N.W.2d 253, 258 (Minn.1980)). Taking the circumstances proved as a whole, it is not rational to conclude that appellant shot Cafle in self-defense. Cafle was shot in the back, twice. Even if Cafle charged him—which is not part of the circumstances proved—the fact that Cafle was shot twice in the back does not support a reasonable inference that appellant acted with a reasonable use of force. *See State v. Richardson,* 670 N.W.2d 267, 277–78 (Minn.2003) (citing Minn.Stat. § 609.06 (2002)).

When the circumstances proved are evaluated as a whole, the facts support only the reasonable inference that appellant shot Cafle intentionally; they do not support a reasonable inference that the shooting was a result of self-defense. Therefore, we affirm Boldman's conviction for second-degree intentional murder. On

remand, the district court should formally convict and sentence appellant on the second-degree murder charge. *See State v. Pflepsen,* 590 N.W.2d 759, 766 (Minn.1999) (describing process for remand and formal conviction and sentencing on the lesser-included charge).

### III.

Appellant's pro se brief argues that the State violated its discovery obligations by failing to provide a transcript of the police interview of a defense witness. At trial, the State attempted to impeach the witness with the police interview transcript, the defense objected that it was not previously furnished a copy, and the State then agreed not to use the transcript. The district court did not rule on the alleged discovery violation at trial because the State agreed on the record not to use the transcript. According to appellant, the State violated Minn. R.Crim. P. 9.01 subds. 1(2) and (6), violated the discovery rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and committed prosecutorial misconduct. The State counters that it satisfied its discovery obligations by providing a CD of the police interview of the witness, and that appellant failed to show prejudice.

Minnesota Rule of Criminal Procedure 9.01, subdivision 1(2), provides in relevant part that the prosecutor must disclose to the defendant known written or recorded statements, written summaries of oral statements, and the substance of oral statements, that relate to the case. Moreover, a prosecutor has a duty to produce material or information in the prosecutor's possession or control that tends to negate or reduce the defendant's guilt. Minn. R.Crim. P. 9.01, subd. 1(6). The rule, however, does not address whether the prosecutor may choose the form of the evidence provided to the defendant.

Generally, a defendant must show not only a discovery violation, but also prejudice as a result of the discovery violation before a new trial will be ordered. *State v. Palubicki,* 700 N.W.2d 476, 489 (Minn.2005). Whether a discovery violation occurred is a question of law that we review de novo. *State v. Scanlon,* 719 N.W.2d 674, 685 (Minn.2006). To establish prejudice a defendant must show that a reasonable probability exists that the outcome of the trial would have been different if the disputed evidence had been produced. *State v. Jackson,* 770 N.W.2d 470, 479 (Minn.2009). This determination rests within the discretion of the trial judge, whose determination will only be reversed when the discovery violation, viewed in the light of the whole record, appears to be inexcusable and so prejudicial that the defendant's right to a fair trial was denied. *See Scanlon,* 719 N.W.2d at 685.

Based upon our review of the record, it is not necessary to determine whether the State may choose the form of the evidence provided to the defendant under Rule 9.01, or whether the State's choice here violated the *Brady* rule. We conclude that appellant has failed to establish any prejudice resulting from the failure of the State to provide the transcript. When the defendant objected to the use of the transcript, the State agreed not to use the transcript, and the transcript was not used to impeach the witness, or for any other purpose. Thus, any error was harmless beyond a reasonable doubt.

Because we conclude that the evidence was not sufficient to support the first-degree murder conviction but was sufficient to support a second-degree murder conviction, and that the alleged discovery violation was harmless, we vacate appellant's conviction for first-degree felony murder, and remand to the district court to enter a judgment of conviction and im-

pose sentence on the second-degree murder charge.

Vacated and remanded.