*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0463**

State of Minnesota,
Respondent,

vs.

Marlon Terrell Pratt,
Appellant.

**Filed April 6, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR0844935

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Marlon Terrell Pratt, Minneapolis, Minnesota (pro se appellant)

        Considered and decided by Cleary, Presiding Chief Judge; Bjorkman, Judge; and

Reyes, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

        Appellant raises several arguments regarding his two trials for multiple counts of

theft by swindle. We affirm.

# FACTS

In 2009, a jury found appellant Marlon Terrell Pratt guilty of 17 counts of theft by swindle and two counts of racketeering for his role in a mortgage-loan-fraud scheme. The underlying facts are summarized in the supreme court's review of Pratt's first trial, *State v. Pratt*, 813 N.W.2d 868 (Minn. 2012). The supreme court found that the district court judge who presided over Pratt's first trial was disqualified under the Code of Judicial Conduct because he had been retained by the Hennepin County Attorney's Office to serve as an expert witness in a different case. 813 N.W.2d at 872-73. As a result, the supreme court reversed Pratt's convictions and remanded for further proceedings. *Id.* at 878-79.

On remand, the district court granted Pratt's motion to proceed pro se for his second trial. But the district court appointed advisory counsel from the Hennepin County Public Defender's Office to assist Pratt as needed. On August 7, 2013, Pratt's November 2013 trial was assigned to Judge Stephen Swanson, with motions for continuances assigned to Judge Toddrick Barnette.

At a pretrial hearing on October 29, Pratt properly presented a motion for a continuance before Judge Barnette. Pratt explained his many objections to the second trial, including that it was double jeopardy, that his advisory counsel was an informant, that the court lacked jurisdiction, and that the prosecutors had failed to meet their discovery obligations. Judge Barnette denied Pratt's motion for a continuance.

On November 5, Pratt again moved for a continuance, but at a pretrial hearing before Judge Swanson. Eventually, Judge Swanson recessed the hearing so that Pratt

could contact Judge Barnette's office. Because Judge Barnette was unavailable, Judge Mark Wernick heard Pratt's motion for a continuance. Pratt repeated his earlier explanation, and also explained that his wife had been diagnosed with stage-three cancer. In response, Judge Wernick explained that Judge Barnette had previously resolved Pratt's motion for a continuance based on discovery problems so he would only consider Pratt's motion for a continuance based on his wife's diagnosis. Judge Wernick denied Pratt's motion for a six-month continuance, explaining that he could not continue Pratt's case indefinitely while Pratt's wife dealt with this serious and potentially long-term health problem. The parties then resumed their pretrial hearing before Judge Swanson, who denied Pratt's motions to dismiss for lack of subject-matter jurisdiction, lack of probable cause, lack of personal jurisdiction, prosecutorial misconduct, failure to produce evidence, double jeopardy, and res judicata.

After this hearing, Pratt alleged that his advisory counsel, the prosecutor, and Judge Wernick had engaged in improper ex-parte communications. Pratt explained that, as he was waiting outside Judge Barnette's chambers on November 5, he saw the prosecutors and his advisory counsel enter the judge's chambers through a back entrance. According to Pratt, he learned from a law clerk that the attorneys were discussing Pratt's continuance motion with Judge Wernick. But Pratt's advisory counsel disputed Pratt's allegation:

> Before we do go off the record, I want to comment on what happened out of the court's presence regarding Judge Barnette's chambers.

3

> At no time, counsel can verify for me, did we have any communication with the court regarding Mr. Pratt's request for continuance.
>
> The only person we communicated with was a clerk searching for the judge that would handle Mr. Pratt's motion.

Judge Wernick later submitted a statement, in which he explained:

> Prior to taking the bench [to hear Pratt's continuance motion], neither the prosecutor nor [Pratt's] advisory counsel came back to the [c]ourt's chambers. This [c]ourt had no "off the record" conversations with either the prosecutor or [Pratt's] advisory counsel about [Pratt's] continuance motion. [Pratt's] claim to the contrary is categorically false.

The district court later denied Pratt's motion for an evidentiary hearing to develop the record regarding his ex-parte-communication allegation.

After jury selection had begun on Pratt's second trial, Pratt again moved for a continuance and filed several motions regarding evidentiary issues. All of his motions were denied. A few days later, the parties presented a settlement agreement to the district court, in which they agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3, on counts 3, 4, 5, 6, and 8 of the amended complaint. If the district court accepted the agreement and entered a guilty judgment to all five counts, the state agreed to dismiss the remaining charges with prejudice and to recommend a sentence that would not require Pratt to return to incarceration. After Pratt waived his trial rights on the record, the district court accepted the agreement and received exhibits for the stipulated-facts trial.

On December 2, 2013, the district court filed a written order finding Pratt guilty of the five counts presented in the stipulated-facts trial. That same day, Pratt filed a motion

4

to rescind the agreement, arguing that he was tricked into accepting it. Pratt repeated this motion the next day and moved to dismiss all charges with prejudice.

On December 4, the district court held a hearing to pronounce its judgments, and denied Pratt's motions as untimely. Two days later, Pratt moved to void the district court's judgment. At Pratt's sentencing hearing, the district court denied this motion, and sentenced Pratt to 1,022 days in prison with credit for 1,022 days served. The state then agreed to dismiss all remaining charges against Pratt, and the district court ordered dismissal. This appeal followed.

## D E C I S I O N

### I. Denial of Pratt's motion for a continuance

Pratt first challenges the denial of his second motion for a continuance, which was heard before Judge Wernick on November 5, 2013. We review the denial of a motion for continuance for a clear abuse of discretion. *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987). But "[a] defendant must show prejudice to justify reversal" of the district court's denial. *Id.*

Pratt argues that Judge Wernick should have been prevented from ruling on the continuance motion because he was a material witness in Pratt's case, he was biased against Pratt, and he had an interest in the outcome of Pratt's case. *See* Minn. Code Jud. Conduct Rule 2.11(A) (stating that a judge should disqualify himself if he has bias or prejudice concerning a party, personal knowledge of the facts, or is "likely to be a material witness in the proceeding"). But the record does not support Pratt's assertions. Pratt placed Judge Wernick on his list of potential witnesses for his second trial because

5

Judge Wernick presided over several hearings before Pratt's first trial.  The district court

denied Pratt's request to subpoena Judge Wernick because he had no information relevant

to the jury or to the charges in the complaint.  There is no evidence that Judge Wernick

was a "material witness" with an interest in the outcome of Pratt's trial, as Pratt suggests.

Moreover, our review of the motion-hearing transcript does not uncover any bias

on the part of Judge Wernick.[1]  Judge Wernick listened to Pratt's lengthy request for a

continuance before denying Pratt's motion because, even though his wife's medical

condition was very serious, his trial could not be postponed indefinitely.  He then told

Pratt that he could ask Judge Swanson for accommodations during trial if he needed time

to handle his family obligations.  The mere fact that Judge Wernick had previously issued

rulings in Pratt's case and in the case of Pratt's codefendant does not render him biased

against Pratt.  *See State v. Dorsey*, 701 N.W.2d 238, 249 (Minn. 2005) ("[J]udges are

presumed to have the ability to set aside nonpersonal knowledge and make decisions

based solely on the merits of cases before them." (quotation omitted)); *State v. Kramer*,

441 N.W.2d 502, 505 (Minn. App. 1989) ("A judge's prior adverse ruling in a case is not

sufficient to show prejudice which would disqualify the judge."), *review denied* (Minn.

Aug. 9, 1989); *Olson v. Olson*, 392 N.W.2d 338, 341 (Minn. App. 1986) ("Prior adverse

rulings . . . cannot constitute bias.").

Pratt also suggests that Judge Wernick's ruling on the continuance motion violated

his due-process rights.  But, unlike the situation in Pratt's cited caselaw, there is no

---

[1] Pratt suggests that this transcript is inaccurate.  But the accuracy of a transcript is an
issue for the district court.  *See Doty v. Doty*, 533 N.W.2d 72, 75 (Minn. App. 1995)
("We will not resolve a factual dispute about the accuracy of the transcript.").

evidence of actual or potential bias on the part of Judge Wernick. *See Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 872, 881, 884, 129 S. Ct. 2252, 2257, 2262-64 (2009) (finding that "due process requires recusal" and "there is a serious risk of actual bias" when a judge receives a large campaign contribution from a party). There is also no evidence that denial of the November 5 continuance motion prejudiced the outcome of Pratt's trial, particularly because Judge Wernick did not preside over Pratt's trial and because Pratt brought other motions for continuances, which were also denied. We therefore conclude that Judge Wernick was not precluded from ruling on Pratt's continuance motion, and did not abuse his discretion in denying the motion.

## II.     Ex-parte communications

Pratt argues that his advisory counsel, the prosecutor, and Judge Wernick engaged in an improper ex-parte communication on November 5.[2] Both judges and lawyers are generally prohibited from engaging in ex-parte communications. Minn. Code Jud. Conduct Rule 2.9; Minn. R. Prof. Conduct 3.5(g).

Pratt is correct that any ex-parte communication regarding his motion for a continuance would have constituted an error. *See State v. Schlienz*, 774 N.W.2d 361, 367 (Minn. 2009) (explaining that the judge's communication with the prosecutor regarding

---

[2] The state argues that Pratt has waived this argument because he "provides no documented factual support, makes no legal argument, and fails to cite any legal authority in support of his allegation of error." We disagree. In his appellate brief, Pratt provides documentation and cites Minnesota caselaw. Pratt has provided an adequate record for our review. *See Thorp Loan and Thrift Co. v. Morse*, 451 N.W.2d 361, 363 (Minn. App. 1990) ("When an appellant acts as attorney pro se, appellate courts are disposed to disregard defects in the brief, but that does not relieve appellants of the necessity of providing an adequate record and preserving it in a way that will permit review."), *review denied* (Minn. Apr. 13, 1990).

the defendant's plea-withdrawal motion was an error). But there is simply no evidence to corroborate Pratt's claim that an ex-parte communication occurred. Both Pratt's advisory counsel and Judge Wernick stated on the record that no ex-parte communication took place.

And, even if an ex-parte communication had occurred, the error was harmless beyond a reasonable doubt. *See State v. Kelley*, 517 N.W.2d 905, 908 (Minn. 1994) ("[T]he defendant is not entitled to relief if the error was harmless beyond a reasonable doubt."). There is no evidence that the alleged ex-parte communication affected the outcome of Pratt's trial or the denial of Pratt's many other motions for continuance. *See id.* Pratt is not entitled to a new trial based on his ex-parte-communication allegation.

## III.    Prosecutorial misconduct

Pratt argues that the prosecutor committed prejudicial misconduct by failing to disclose the first trial judge's conflict of interest. When reviewing a claim of prosecutorial misconduct, we "will reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003). "If the misconduct was serious, the misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error. For less serious misconduct, the standard is whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* (quotations and citations omitted).

The record reveals that the prosecutor disclosed the first judge's potential conflict of interest the day after he learned of it. We conclude that there is therefore no evidence

8

of prosecutorial misconduct. In addition, the supreme court already granted Pratt a remedy for the first judge's disqualification by remanding for a new trial. *Pratt*, 813 N.W.2d at 878-79. In doing so, the supreme court did not suggest that there was any misconduct on the part of the prosecutor. Pratt cites no caselaw that a prosecutor who properly discloses a judge's potential conflict is barred from prosecuting a second trial on remand. Because there is no evidence of prosecutorial misconduct, let alone serious misconduct, Pratt is not entitled to another new trial based on the first trial judge's conflict of interest. *See Powers*, 654 N.W.2d at 678.

**IV.    Destruction or concealment of evidence**

Pratt next argues that the prosecutors violated their discovery obligations under Minn. R. Crim. P. 9.01 by destroying or concealing material and exculpatory evidence. Rule 9.01 requires prosecutors to disclose evidence to defendants, including evidence "that tends to negate or reduce the defendant's guilt." Minn. R. Crim. P. 9.01, subd. 1(6). We review de novo whether a discovery violation has occurred. *State v. Boldman*, 813 N.W.2d 102, 109 (Minn. 2012). A defendant must show that the discovery violation prejudiced him by affecting the outcome of the trial. *Id.* A determination regarding prejudice "rests within the discretion of the trial judge, whose determination will only be reversed when the discovery violation, viewed in the light of the whole record, appears to be inexcusable and so prejudicial that the defendant's right to a fair trial was denied." *Id.*

The district court found that "there is nothing in the record that indicates in any way any impropriety or wrong-doing on the state's part in terms of honoring [Pratt's] requests for discovery." We agree. The record reveals that the state made all of its

evidence available for Pratt to view at his convenience, and that Pratt never requested an opportunity to do so. The district court also repeatedly explained the state's discovery obligation and Pratt's obligation to perform his own investigation. Eventually, the district court asked the state to provide additional information to Pratt, which he could have reviewed earlier, because Pratt "need[ed] some assistance," not because the state had violated a discovery obligation. We can find no evidence that the state improperly concealed evidence from Pratt.

The district court also found that "[t]here's nothing that [Pratt has] produced that would suggest in any way that the state has destroyed any exculpatory evidence." When analyzing a destruction-of-evidence claim, "we consider whether the destruction was intentional and whether the exculpatory value of the lost or destroyed evidence was apparent and material." *State v. McDonough*, 631 N.W.2d 373, 387 (Minn. 2001). Pratt is correct that certain physical items, including a gun and computers, were lost or destroyed before his second trial. But there is no evidence in the record that the destruction was intentional. In addition, there is no evidence that the items were material to Pratt's trial. The computer files were copied and made available to Pratt. And the district court found that the gun was not relevant, particularly in light of Pratt's concession that it was not introduced into evidence or even mentioned at his first trial. Because the allegedly destroyed evidence was either irrelevant or provided to Pratt in a different form, there is no indication that the evidence was exculpatory or material to Pratt's trial. *See id.*

Pratt also appears to suggest that the destruction of the evidence created a *Brady* violation. A *Brady* violation occurs when (1) evidence favorable to the accused because it is exculpatory or impeaching; (2) is willfully or inadvertently suppressed by the state; and (3) causes prejudice to the accused. *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005). As stated above, there is no evidence that the missing items were exculpatory or favorable to Pratt and there is no evidence that Pratt suffered prejudice. *See id.* There is therefore no evidence of a *Brady* violation, and no evidence that the prosecutors violated their discovery obligations under Minn. R. Crim. P. 9.01.

## V. Sufficiency of the evidence

"In assessing the sufficiency of the evidence, we review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). Pratt argues that the evidence was insufficient to prove that he engaged in a felonious swindle scheme because the jury in his first trial found that the lenders suffered $0 in damages. But the supreme court rejected this argument in Pratt's previous appeal. *See Pratt*, 813 N.W.2d at 875 (stating that Pratt's argument that the evidence did not show that the lenders were deprived of their loan funds had "no merit" because "'permanent deprivation' is not an element of theft by swindle").

In this appeal, Pratt appears to suggest that he is entitled to the jury's finding of $0 in damages due to the principles of double jeopardy, res judicata, and collateral estoppel.

11

But double jeopardy does not bar retrial when a conviction is reversed based on a trial error. *State v. Harris*, 533 N.W.2d 35, 36 (Minn. 1995). And res judicata and collateral estoppel apply only after claims or issues have been adjudicated. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Here, Pratt's guilt was not previously adjudicated because he was granted a new trial, and the district court was free to reach a judgment without consulting the previous jury verdict. In addition, the jury's finding of no damages was irrelevant to the determination of Pratt's guilt. *See State v. Lone*, 361 N.W.2d 854, 860 (Minn. 1985) ("In theft by swindle, value becomes irrelevant."); *see also Pratt*, 813 N.W.2d at 875.

Pratt does not appear to challenge the sufficiency of the evidence for any element of theft by swindle. The elements of theft by swindle are: (1) the owner of property gave up possession due to a swindle; (2) the defendant intended to obtain possession of the property for himself or someone else; and (3) the defendant's act was a swindle. *See* Minn. Stat. § 609.52, subd. 2(4) (2010); 10 *Minnesota Practice*, CRIMJIG 16.10 (2006). In his second trial, Pratt stipulated to evidence that he negotiated loan transactions above the price of the property with the excess money transferred to him and that the lenders were not advised of this arrangement. The district court concluded that the lenders would likely have rejected the loan applications had they known of the payments to Pratt and that the lenders therefore forwarded money due to Pratt's swindle. Based on our review of the record, the stipulated evidence was sufficient for the district court to conclude that Pratt was guilty of the five theft-by-swindle offenses. *See Al-Naseer*, 788 N.W.2d at 473; *see also Pratt*, 813 N.W.2d at 875 (stating that the only reasonable inference was that the

12

lenders would not have approved the loans "if they had known of the falsehoods and misrepresentations contained within them").

## VI.    Pratt's waiver of trial rights

Pratt next appears to argue that his waiver of trial rights under rule 26.01, subdivision 3, was inadequate.[3] "When a defendant waives a jury trial or agrees to a trial on stipulated facts, the Minnesota Rules of Criminal Procedure require that the defendant make an express waiver of specified trial rights." *State v. Knoll*, 739 N.W.2d 919, 921 (Minn. App. 2007) (citing Minn. R. Crim. P. 26.01, subds. 1, 3). A defendant "must acknowledge and personally waive the rights to: (1) testify at trial; (2) have the prosecution witnesses testify in open court in the defendant's presence; (3) question those prosecution witnesses; and (4) require any favorable witnesses to testify for the defense in court." Minn. R. Crim. P. 26.01, subd. 3(a). Failure to obtain a valid waiver of each right may result in the reversal of a defendant's conviction. *State v. Antrim*, 764 N.W.2d 67, 71 (Minn. App. 2009).

Here, Pratt's waiver was made orally on the record. *See* Minn. R. Crim. P. 26.01, subd. 3(b) ("The agreement and the waiver must be in writing or be placed on the record."). The district court explained that it had a number of questions for Pratt pursuant to the rules of criminal procedure and that Pratt would need to knowingly and voluntarily waive his trial rights. The district court then stated: "You have asserted over the last

---

[3] Pratt may instead be arguing that the district court erred by denying his first motion to rescind the agreement. Pratt argued to the district court that, under the Truth in Lending Act (TILA), he had 72 hours to rescind his agreement. But TILA does not apply to an agreement in a criminal case. *See* 12 C.F.R. § 226.1(b) (explaining that TILA "gives consumers the right to cancel certain credit transactions").

weeks and days that you are suffering from such emotional distress that you cannot think clearly. If I were to think that that was the case today, then I could not accept any waivers and we could not go forward with this agreement." After consulting with his advisory counsel, Pratt stated: "Today I am in the correct state of mind to agree to these stipulations." Following this statement, the district court asked Pratt several questions to ensure that he was thinking clearly, was not under the influence of medication, and wanted to enter the plea agreement. Pratt again consulted his advisory counsel before the district court led Pratt through the following waiver of his rights:

> THE COURT: All right. Well, then let me go through the requirements of the rule and let me read it right out here in the record. This is 26.01, subd. 3, trial on stipulated facts, subsection (a). The defendant and the prosecutor may agree that a determination of defendant's guilt may be submitted to and tried by the court based on stipulated facts. Before proceeding the defendant must acknowledge and personally waive the following rights. And I'll just go through these rights with you right now. Because this is a stipulated facts trial, by definition you are giving up some rights. Do you understand?
> PRATT: Mm-hmm.
> THE COURT: All right. The first right is you are giving up the right to testify at trial. Do you understand that right?
> PRATT: Are you . . . speaking of this trial right now today?
> THE COURT: Yes.
> PRATT: Okay.
> THE COURT: Because . . . this is a stipulated facts trial, you won't have the opportunity to sit in the witness stand and testify.
> PRATT: Got you.
> THE COURT: Do you understand that?
> PRATT: Yes, sir.
> THE COURT: Do you give up that right?
> PRATT: Yes.

> THE COURT:     Do you also understand that you give up the right to have the prosecution witnesses testify in open court in your presence?
>
> PRATT:     Yes, I understand and I give up the right today to have the witnesses testify on behalf of the prosecutor.
>
> THE COURT:     Do you also understand that you are giving up your right to question the prosecution witnesses?
>
> PRATT:     Yes.
>
> THE COURT:     And do you understand that you are giving up the right to have the court issue a subpoena to require witnesses favorable to your side to appear here in court?
>
> PRATT:     Yes.
>
> THE COURT:     You also understand that you are giving up your right to a jury trial?
>
> PRATT:     Yes.
>
> THE COURT:     Because that's what we're about to begin. You understand?
>
> PRATT:     Yes.
>
> THE COURT:     All right. Mr. Pratt, all these rights that you have indicated that you are giving up today, are you doing this freely and voluntarily?
>
> PRATT:     Yes.

Pratt and the district court then discussed Pratt's waiver and the effect of this waiver for several more minutes.

We conclude that the parties here did not conduct a proper stipulated-facts trial under rule 26.01, subdivision 3 because, rather than presenting stipulated facts to the district court, they presented a body of evidence for the district court to consider. *See Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013) (distinguishing between an agreement "regarding the actual event or circumstance" and an agreement regarding "the material to be submitted to the trial court"). "[T]he submission of documentary evidence presenting contradictory versions of events cannot constitute a valid trial on stipulated facts under Minn. R. Crim. P. 26.01, subd. 3." *Id.* at 721. Nevertheless, the parties met

15

the requirements for a bench trial under rule 26.01, subdivision 2. *See id.* Based on the above record, we conclude that Pratt validly waived all of his jury-trial rights. *See* Minn. R. Crim. P. 26.01, subd. 1(2). Contrary to Pratt's allegation, there is no evidence that Pratt was coerced into the agreement by his advisory counsel, the prosecutors, or the district court. Because Pratt's waiver of his rights was adequate, the district court did not err by denying Pratt's motion to vacate or void the agreement.

## VII.   Jurisdiction

Finally, Pratt argues that the district court lacked jurisdiction "to hear [his] case." As evidence, Pratt cites a notarized deed of trust and consent judgment that he submitted to the district court and a certificate from the Minnesota Secretary of State certifying the notary public who notarized this document. Pratt suggests that, through the certificate, the secretary of state authenticated Pratt's documents, and that somehow the documents eliminated the district court's jurisdiction. But, as the district court explained several times to Pratt, the consent-judgment concept does not apply in criminal cases. *See City of Barnum v. Sabri*, 657 N.W.2d 201, 205-06 (Minn. App. 2003) (explaining that parties can negotiate an agreement in a civil case and enter a consent decree, which "does not represent the judgment of the court"). And by certifying a notary public, the secretary of state did not certify the legality of Pratt's documents. *Cf. Barnard v. Schuler*, 100 Minn. 289, 292, 110 N.W. 966, 968 (1907) (explaining that a notary must certify that the party before her is the person executing the document, but does not certify "the absolute correctness" of the document).

16

"Jurisdiction" refers to a court's "power to hear and decide disputes." *State v. Smith*, 421 N.W.2d 315, 318 (Minn. 1988). In a criminal case, a district court has jurisdiction over anyone charged with committing an offense within the state. Minn. Stat. § 609.025(1) (2010); *Sykes v. State*, 578 N.W.2d 807, 811 (Minn. App. 1998), *review denied* (Minn. July 16, 1998). Pratt was charged with and convicted of committing theft by swindle in Hennepin County, and he does not challenge the location of his crimes. The district court therefore had jurisdiction over Pratt's case.

**Affirmed.**