*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1988**

Brandon Oneil Sturdivant, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 20, 2015
Affirmed
Stoneburner, Judge***

Hennepin County District Court
File No. 27-CR-11-10023

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Stoneburner, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant challenges the postconviction court's decision on remand that respondent state's failure to disclose a potential witness's address prior to appellant's trial on charges of aiding and abetting first-degree aggravated robbery was not prejudicial and that appellant is therefore not entitled to a new trial. We affirm.

**FACTS**

Appellant Brandon Oneil Sturdivant was convicted of aiding and abetting first-degree aggravated robbery and sentenced to 88 months in prison. Sturdivant's appeal from the verdict and from the denial of two motions for a new trial was stayed to permit him to petition for postconviction relief on several grounds, including an alleged discovery violation by the state. The postconviction court denied the petition, and the appeal was reinstated. This court affirmed denial of relief on all grounds except the discovery violation. *State v. Sturdivant*, No. A12-0402, 2013 WL 6569914 (Minn. App. Dec. 16, 2013). We held that the state's failure to disclose the address of a potential witness violated Minn. R. Crim. P. 9.01, subd. 1(1)(a), (b),[1] and remanded to the postconviction court for an evidentiary hearing on whether the rule 9 violation prejudiced Sturdivant, entitling him to a new trial. *See id.* at *9 (stating that on remand the district court, in "assessing the prejudicial impact of the discovery violation" could "properly consider whether it is 'questionable' that [the undisclosed witness] was telling the truth in

---

[1] Minn. R. Crim. P. 9.01, subd. 1(1)(a), (b), requires the prosecutor to provide names and addresses of witnesses and anyone who has information relating to the case.

her posttrial statement," as well as whether the witness "is currently available and willing to testify, and if so, whether her testimony would significantly aid appellant").

At trial, Sturdivant was identified by two eyewitnesses to the robbery, Bobby Lee Mosley and Rashad Gilbert, both of whom knew Sturdivant as "Slim" prior to the robbery. Mosley testified that Sturdivant was at a gathering at Michael Northern's apartment in January 2011, where he observed Mosley with a large amount of cash. Sturdivant left, saying that he would return. He returned with another man who had a gun, and the two robbed Mosley and others. Gilbert testified that he was at Northern's apartment that evening to obtain money for drugs. He saw Sturdivant leave the apartment and not long afterward heard Northern tell a woman "to let Slim in the back door." Sturdivant then entered with another man who had a gun, and they robbed Mosley and others. During cross-examination of Mosley and Gilbert, the jury was made aware of several inconsistencies in their testimony, and both were impeached: Mosley with evidence that he was present for a drug deal and Gilbert, who admitted he was previously there to use drugs, with three prior convictions of giving false information to the police.

The state's discovery violation consisted of failing to provide an address for Katie Rogstad, who was present in Northern's apartment at the time of the robbery. After Sturdivant was convicted, he learned that Rogstad, a homeless person, was the woman who let the two robbers into the apartment. At the time of Sturdivant's trial, the state failed to disclose to Sturdivant that Rogstad was located at the Hennepin County workhouse. The state did not call Rogstad as a witness.

3

A defense investigator interviewed Rogstad at the workhouse shortly after Sturdivant's trial. She stated that she let the men who committed the robbery into Northern's apartment. Rogstad stated that she did not know Sturdivant and she was not able to identify Sturdivant from the photo lineup used by defense investigators. When she was shown Sturdivant's photograph, she stated that he was not one of the men that she let into the apartment building. She later signed an affidavit to that effect, and at the evidentiary hearing on remand, Rogstad testified that she does not know Sturdivant and that he is not one of the men she let into the apartment building.

Rogstad agreed that when she was interviewed at the scene of the robbery she told an officer that she had fallen asleep on the couch at Northern's apartment; that she woke up and saw other people in the apartment and went into a bedroom, where she later heard yelling and someone shouting "get on the ground." She told the officer that she opened the bedroom door and peeked but didn't see much because she was "pulled back into the bedroom." Rogstad admitted that she was under the influence of drugs at the time of the robbery. She recalled telling the officer that the men were "bigger men, pretty heavy, both of them had a lot of hair." She did not tell the officer that one man was wearing a hat or was thin in the face. Rogstad identified still photographs from a surveillance camera as depicting her letting the men into the apartment building; one of the photographs shows one man wearing a close-fitted hat.

Rogstad's description of the robbers differed significantly from descriptions given to the 911 operator at the time of the robbery by Mosley and Northern and the descriptions given by Mosley and Gilbert at Sturdivant's trial. Mosley described Slim as

4

a tall, slim male with a little hair on his face and a goatee, with short cropped hair, and wearing a hat or "dew-rag." This description is consistent with the surveillance photo. Gilbert also testified that Slim was wearing a cap or skull-cap. The postconviction court found that Rogstad's testimony was not credible, noting (1) that her description of the men differed substantially from the descriptions of other witnesses to the robbery and the photo from the surveillance camera and (2) the significant inconsistencies in her account of the events given at the scene and in her affidavit and testimony. The district court also noted that Rogstad "freely admitted that she does not remember the [day] well and that she was under the influence." The postconviction court denied Sturdivant's petition for a new trial "because there is not a reasonable probability that [Rogstad's] testimony would have changed the outcome of his 2011 trial." This appeal follows.

## D E C I S I O N

We review a postconviction court's decision for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn. 2010). A postconviction court's factual determinations are reviewed for clear error, and legal conclusions are reviewed de novo. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012).

To obtain a new trial for a violation of Minn. R. Crim. P. 9, a defendant must generally establish prejudice resulting from the violation. *State v. Boldman*, 813 N.W.2d 102, 109 (Minn. 2012). To establish prejudice a defendant must show that "a reasonable probability exists that the outcome of the trial would have been different if the evidence . . . had been produced." *State v. Jackson*, 770 N.W.2d 470, 479 (Minn. 2009) (quotation omitted). This court will reverse a district court's determination on this issue only if the

violation, viewed in the light of the whole record, appears inexcusable and so prejudicial that it denied the defendant the right to a fair trial. *Id.*

In determining whether a rule 9 violation prejudiced a defendant, Minnesota appellate courts have considered: (1) whether the defense had an adequate opportunity to attack the credibility of the state's witnesses without the undisclosed evidence and the strength of the state's evidence, *see, e.g.*, *id.* at 480-81 (concluding that failure to produce unredacted transcript of police interview with one witness did not warrant a new trial when the defense was able to impeach that witness without the transcript, and the state's evidence against the defendant was strong); (2) whether the new evidence would have changed the state's theory of the case, *see, e.g.*, *State v. Colbert*, 716 N.W.2d 647, 656 (Minn. 2006) (rejecting the argument that defendant was prejudiced by a change in a forensic video analyst's opinion as changing the state's theory of the case, when the record showed that the state had previously argued that theory); and (3) the probable ability to locate an undisclosed witness and the credibility and availability of that witness's likely testimony, *see, e.g.*, *State v. Holmes*, 325 N.W.2d 33, 34-35 (Minn. 1982) (concluding that a defendant failed to establish prejudice from the state's failure to disclose a potential witness when the witness might have been difficult to locate and his credibility, his willingness to testify, and the exculpatory value of his testimony were questionable).

Sturdivant asserts that Rogstad is a credible witness who is willing to testify and that her testimony would significantly aid the defense because she did not identify Sturdivant in the photo lineup and stated in her affidavit and in testimony at the

postconviction evidentiary hearing that Sturdivant was not one of the men she admitted into the apartment building. Sturdivant argues that the district court erred by failing to make findings on each of the factors that may be considered in assessing the prejudicial impact of a discovery violation, maintaining that many of these factors weigh in favor of finding prejudice. We disagree. We have been provided with no authority for the proposition that once the postconviction court concludes that a witness's testimony is so lacking in credibility that it would not have affected the outcome of a trial, the postconviction court must nonetheless make findings on other factors that could be considered in weighing the prejudicial impact of a discovery violation. And from our own painstaking review of the record, we conclude that any factors weighing in Sturdivant's favor do not overcome Rogstad's lack of credibility.

Plainly, Rogstad is available and willing to testify, but the district court found her not credible, and we give considerable deference to a postconviction court's credibility determinations. *McDonough v. State*, 827 N.W.2d 423, 426 (Minn. 2013). Sturdivant argues that the credibility determination is for the jury, but this court specifically required the postconviction court to assess Rogstad's credibility and whether her testimony would significantly aid Sturdivant. We conclude that the district court did not clearly err in determining that Rogstad's non-credible testimony would not significantly aid Sturdivant at trial.

Sturdivant, based on his critique of eyewitness testimony in general and the impeachment evidence against Mosley and Gilbert, argues that the state's evidence was not strong, a factor that weighs in favor of finding that he was prejudiced by the lack of

7

Rogstad's testimony. But given that (1) Mosley and Gilbert knew Sturdivant prior to the robbery; (2) their 911-call and trial-testimony descriptions of Sturdivant are consistent; and (3) their descriptions are consistent with the security photo, it is difficult to describe the state's case as "not strong." And the general criticism of eyewitness testimony weighs heavily against Rogstad, who admits that she was under the influence of drugs, had been sleeping, did not witness the robbery, has only a vague memory of the event, and does not know Sturdivant. Although Sturdivant did not have any opportunity to review Rogstad's statement before or during the trial, he was able to challenge the credibility of the state's witnesses without Rogstad's testimony, and there is nothing to suggest that the state's theory of the case would have been affected by Rogstad's testimony. On this record we conclude that the postconviction court did not abuse its discretion by concluding that the state's rule 9 violation did not significantly prejudice Sturdivant and that he is therefore not entitled to a new trial based on the violation.

Sturdivant argues that even if he failed to establish prejudice, he should be granted a new trial in the interests of justice. In some cases, a discovery violation by the state has been held to entitle a defendant to a new trial in the interests of justice, even absent prejudice. *See, e.g.*, *State v. Schwantes*, 314 N.W.2d 243, 245 (Minn. 1982) (granting a new trial for the state's failure to notify the defense of evidence that bore on his decision to waive marital privilege); *State v. Zeimet*, 310 N.W.2d 552, 553 (Minn. 1981) (granting a new trial in the interests of justice for the state's failure to disclose information concerning culpability of a third party, which might have led the defense to other useful information); *State v. Kaiser*, 486 N.W.2d 384, 386-87 (Minn. 1992) (granting a new

trial for failure to disclose the victim's statement that cast doubt on identification of the defendant, coupled with the prosecutor's assertion in closing that the victim "never once backed away" from the identification).

In the opinion remanding this matter to the postconviction court, we noted a lack of evidence that the state acted in bad faith and concluded that the state did not suppress favorable exculpatory evidence. *Sturdivant*, 2013 WL 6569914, at \*5, \*7. By remanding this case to the postconviction court for an evidentiary hearing on the issue of prejudice, we implicitly rejected an argument that a new trial is required in the interests of justice. We now explicitly hold that Sturdivant has failed to establish that the interests of justice require a new trial in this case.

**Affirmed.**