*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1421**

State of Minnesota,
Respondent,

vs.

Stephen Anthony Reed,
Appellant.

**Filed July 11, 2016
Affirmed
Smith, John, Judge***

Hennepin County District Court
File No. 27-CR-15-4923

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Ross, Presiding Judge; Stauber, Judge; and Smith, John, Judge.

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm because the district court did not err by concluding that police had a reasonable, articulable suspicion of criminal activity sufficient to temporarily detain Stephen Anthony Reed and because Reed was not prejudiced by the state's discovery violation.

## FACTS

On February 21, 2015, at approximately midnight, off-duty police officers working at a parking garage in downtown Minneapolis reported hearing gunshots. Minneapolis Police Officer Samantha Belcourt, who was on duty and just one block away from the scene, responded to the call and arrived in less than one minute. As Officer Belcourt arrived she observed a man, who was the only person in the area, walking away from where gunshots were heard. The man was later identified as Reed. Officer Belcourt rolled down the passenger-side window of her squad car and asked Reed if he had heard or seen anything. Officer Belcourt believed that Reed "seemed really nonchalant about it and said that he might have heard something that sounded like shots." Officer Belcourt observed that Reed tried to scoot away while she was asking questions, that he was fidgeting with the waistband area of his jacket during the interaction, and that he appeared nervous.

After approximately 30 seconds of conversation, Reed began to walk away. Officer Belcourt yelled at Reed to come back to the front of her squad car, at which time Reed started running away. Officer Belcourt then exited her squad car to pursue Reed on foot. She heard a loud clang as she exited her vehicle and suspected that Reed had thrown a gun

through a nearby iron fence. She radioed other officers to inform them that there may be a gun near the fence. She then pursued Reed for approximately 30 seconds before arresting him with the help of other officers who arrived on the scene. Another officer placed Reed in a squad car and found two knives in Reed's pockets. Officer Belcourt and other officers subsequently returned to the iron fence to search for a gun, but did not find anything there. However, another officer found a gun, placed inside a glove, approximately 30 feet from the spot where Reed was apprehended. Officers found a matching glove under Reed's body when they arrested him.

The state charged Reed with one count of being an ineligible person in possession of a firearm, in violation of Minn. Stat. § 624.713, subd. 1(2) (2014). Reed moved the district court to suppress all evidence (*i.e.*, the gun and gloves) found after he was seized. Reed argued that Officer Belcourt did not have a constitutionally-sufficient basis for an investigatory stop. The district court held a contested omnibus hearing to address Reed's motion. Only Belcourt testified at the hearing. The district court ruled on Reed's motion on the record at the hearing. The district court concluded that the stop was justified by a reasonable, articulable suspicion of criminal activity and denied Reed's motion to suppress evidence.

The case proceeded to trial. Prior to trial, the state submitted a list of witnesses, which included five Minneapolis police officers and a forensic scientist from the Minneapolis Crime Lab. Before the second day of trial, the state sought to call another witness, Andrea Feia, a forensic scientist at the Minnesota Bureau of Criminal Apprehension (BCA). Feia was not included on the state's witness list. Reed opposed

3

admission of Feia's testimony, arguing that doing so was prejudicial. The district court ruled that Feia's testimony was admissible. Reed then immediately moved the district court for production of the state's DNA packet and also for a one-week continuance to review the packet and prepare for cross-examination. The district court granted the request for production but denied the continuance. The district court then clarified its earlier ruling, stating that it would allow Feia "to talk about basically the substance of [her] report, which is [that] there was no DNA material, and in general about DNA testing." At the conclusion of trial, the jury found Reed guilty of being an ineligible person in possession of a firearm.

Reed moved for a new trial. Reed argued that he was denied a fair trial because the district court allowed Feia to testify even though she was not on the state's witness list and because he did not have sufficient time to prepare for cross-examination. The district court held a sentencing hearing at which it also addressed Reed's motion for a new trial. The district court began the hearing by sentencing Reed to 60 months of imprisonment, which is the mandatory minimum sentence for the underlying offense. The district court then heard argument on Reed's motion for a new trial. At the conclusion of the hearing, the district court took the matter under advisement. Subsequently, the district court issued an eight-page order denying Reed's motion for a new trial.

Reed appeals.

**D E C I S I O N**

**I.**

Reed contends that the district court erred by denying his motion to suppress evidence on the ground that Officer Belcourt did not have a reasonable, articulable suspicion of criminal activity when she told Reed to stop before he ran away.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. As a general rule, a law-enforcement officer may not make a warrantless arrest of a person without probable cause that the person "had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964). But a law-enforcement officer may temporarily detain a person for investigatory purposes if the officer has a reasonable, articulable suspicion that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-21, 88 S. Ct. 1868, 1879-80 (1968); *State v. Diede*, 795 N.W.2d 836, 842-43 (Minn. 2011). A reasonable, articulable suspicion exists if "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is not high, but the suspicion required must be based on more than a mere "hunch." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). Police must "articulate a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695 (1981)). If the facts are

5

not in dispute, this court applies a *de novo* standard of review to the question whether a police officer had a reasonable, articulable suspicion of criminal activity. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

The parties agree that Officer Belcourt seized Reed for investigatory purposes when Officer Belcourt told Reed to stop moving away and to come back to the front of her squad car. However, the parties disagree about whether the seizure was supported by a reasonable, articulable suspicion of criminal activity. Specifically, Reed argues that nervousness, fidgeting with one's waistband, and walking away from a police interaction are insufficient to create a reasonable suspicion of criminal activity.

"In deciding the propriety of investigative stops, we review the events surrounding the stop and consider the totality of the circumstances in determining whether the police had a reasonable basis justifying the stop." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). Furthermore, "We are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *Id.* at 88-89. In this case, the pertinent events surrounding the stop are that (1) Officer Belcourt was responding to a shots-fired call; (2) she arrived on the scene less than a minute after receiving the call; (3) Reed was the only person present at the scene when she arrived; and (4) Reed was fidgeting with a "bulge" near his waist. In another setting nervousness, fidgeting, and walking away from a police interaction may not create a reasonable suspicion of criminal activity. However, under the totality of the circumstances in this setting, Officer Belcourt reasonably could believe that Reed fired the shots and that he was concealing a gun under his clothing, and we defer to her training and experience in reaching

6

that conclusion. For this reason, we conclude that Officer Belcourt had reasonable suspicion sufficient to justify an investigatory stop.

In sum, the district court did not err by denying Reed's motion to suppress evidence.

**II.**

Reed also contends that the district court erred by denying his post-verdict motion for a new trial.

The Minnesota Rules of Criminal Procedure permit the district court to grant a post-verdict motion for a new trial. Minn. R. Crim. P. 26.04, subd. 1. One basis for a new trial is prosecutorial misconduct, which may take the form of a discovery violation. *See id.*; *State v. Scanlon*, 719 N.W.2d 674, 685-87 (Minn. 2006). To obtain a new trial for a discovery violation, a defendant generally must establish: (1) that there was a discovery violation and (2) that the discovery violation prejudiced the defendant. *State v. Boldman*, 813 N.W.2d 102, 109 (Minn. 2012). To show prejudice a defendant must demonstrate a reasonable probability that the outcome of the case would have been different but for the discovery violation. *See State v. Jackson*, 770 N.W.2d 470, 479 (Minn. 2009). The determination of whether a defendant is prejudiced rests "within the discretion of the trial judge," and will not be reversed unless "the discovery violation, viewed in the light of the whole record, appears to be inexcusable and so prejudicial that the defendant's right to a fair trial was denied." *Boldman*, 813 N.W.2d at 109. This court applies an abuse-of-discretion standard of review to the district court's decision to deny a post-verdict motion for a new trial. *State v. Gatson*, 801 N.W.2d 134, 151 (Minn. 2011).

The parties agree that there was a discovery violation because the state failed to provide notice of its intention to call Feia as a witness. *See* Minn. R. Crim. P. 9.01, subd. 1(1). The parties disagree about whether the discovery violation prejudiced Reed. Reed contends that he was prejudiced by the state's discovery violation because Feia's testimony undercut his chosen defense theory, which was "to argue that the state lacked DNA evidence linking Reed to the glove and gun." Reed argues that the testimony undercut his defense theory because the prosecutor used the testimony to "insinuat[e] that Reed's DNA was probably on the gun." Reed's argument is without merit, for three reasons.

First, Reed's argument is without merit because Feia's testimony did not undercut his defense theory. Feia testified at trial that there was not enough DNA on the firearm to compare with a sample of Reed's DNA. Her testimony thus *aligned* with Reed's contention that "the state lacked DNA evidence linking Reed to the glove and gun." Second, Reed's argument is without merit because the prosecutor's "insinuation" that his DNA was on the gun was duplicative of other evidence presented at trial. Forensic scientist David Carlisle had examined the firearm for Reed's fingerprints prior to trial and testified that there were partial fingerprints on the firearm, but none suitable for comparison to Reed's fingerprints. Carlisle's testimony permitted the state to "insinuat[e]" that Reed's fingerprints were on the firearm, without proving that his fingerprints were on the firearm. Feia's testimony did not prejudice Reed because the testimony was merely duplicative of Carlisle's testimony. Third, Reed's argument is without merit because he has not demonstrated how his trial strategy would have changed in a way that would have affected the outcome of the case. He contends that he would have consulted his own forensic expert

8

and prepared a more thorough cross-examination of Feia.  But Reed has not demonstrated how this cross-examination would have led to a different outcome at trial.  Without doing so, Reed cannot demonstrate that he was prejudiced.  *See Jackson*, 770 N.W.2d at 479.

In sum, the district court did not err by denying Reed's motion for a new trial.

**Affirmed.**