## STATE v. K. E. HEIDELBERG.[1]

January 28, 1944.

No. 33,589.

*Neil Hughes, Don E. Morgan,* and *John Ott,* for appellant.
*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant.

[1]Reported in 12 N. W. (2d) 781.

Attorney General, *Michael J. Dillon*, County Attorney, and *Otto Morck* and *John T. Gearty*, Assistant County Attorneys, for the State.

LORING, CHIEF JUSTICE.

Defendant was convicted in Hennepin county of the crime of grand larceny in the second degree. He appeals from an order denying his motion for a new trial and from the judgment of conviction, and challenges the venue and part of the charge.

Defendant lived in Hennepin county and was employed in that part of the Northern Pump Company's plant which lies in Anoka county. His duties were to assist and advise company employes with reference to various personal problems, among others traffic violations, in order to prevent loss of time from their work. The employes either gave defendant the money to take care of these matters or authorized a payroll deduction therefor. This work required defendant to spend a good deal of his time in the city of Minneapolis. He was "on call" at all times in case anyone got into trouble and could be reached at his home in Minneapolis when not at the plant.

In January 1942, the minor son of one Lambert, a company employe, was taken to Deaconess Hospital in Minneapolis, where an amputation of his arm was performed. In accord with company policy, it was arranged that Lambert receive an advance of $150 on his pay to assist him with the expense of the operation. Defendant handled the transaction. According to Lambert's testimony, when defendant gave him the company check for $150 payable to his (Lambert's) order, defendant asked Lambert to endorse it and said that he would pay the bills. Defendant asserted that he cashed the check for Lambert out of the petty cash fund and gave him the cash to take care of the obligations. There is no dispute that the transaction took place at the company's plant in Anoka county. Neither Lambert nor defendant paid the hospital or the doctor, but eventually the company did, $100 to the hospital and $50 to Dr. Selleseth, the attending surgeon.

An employe of the hospital testified that she had several telephone conversations with defendant in regard to this matter and that he said there must be some "slip up," and, once, that the check was in the mail and would be received by the hospital in a day or so. Defendant denies the tenor of these conversations. The company's auditor also testified that he had a telephone conversation with defendant at his home in Minneapolis and that when defendant was asked if the Lambert matter had been taken care of and if the hospital and doctor bills had been paid he said, "I will have to check my checks and stubs to see when the payments were made." It is undisputed that defendant banked in Minneapolis.

■ In a criminal prosecution the accused is entitled to "the right to a * * * trial, by an impartial jury of the county * * * wherein the crime shall have been committed." This guaranty is both constitutional (Minn. Const. art. 1, § 6) and statutory (Minn. St. 1941, § 627.01 [Mason St. 1927, § 10701]). For an interesting treatment of the historical development of this rule, see State v. Brown, 103 Vt. 312, 154 A. 579, 76 A. L. R. 1029.

In the case at bar there was no evidence that defendant entertained an intent to embezzle Lambert's money when he received it in Anoka county or before he took it to Hennepin county. Without such proof a prosecution would not lie in Anoka county. Rogers v. State, 14 Okl. Cr. 235, 170 P. 269, L. R. A. 1918E, 742, and extensive note. In State v. New, 22 Minn. 76, there was no evidence that the money was taken out of Hennepin county or that unlawful appropriation was made in any other place. In the case at bar, however, there is ample evidence from which the jury was entitled to conclude that defendant deposited the money in his bank account in Minneapolis. No other conclusion could be arrived at if the jury believed his admission to the Northern Pump Company's auditor who inquired about this money. Defendant said, "I will have to check my checks and stubs to see when the payments were made." There is evidence that defendant banked in Minneapolis and none that he had an account elsewhere. With such evidence and the further evidence that he failed to pay either

the doctor or the hospital, the jury might well conclude beyond a reasonable doubt that defendant entertained an intent in Hennepin county to embezzle the funds entrusted to him and did so embezzle them therein. To our minds the evidence is conclusive on the question of venue.

■ Defendant's challenge to the correctness of the charge is based on a summary by the court of the various items of evidence from which the state asserted that the jury might conclude that the offense was committed in Hennepin county. The tenor of the court's language was perhaps unfortunate, but we think there was no possibility that the jury could have been misled by it. There was abundant evidence introduced by the state from which the jury could conclude that the money had been embezzled by defendant. Where was the crime committed? According to the state's evidence, it was not committed by the mere taking of the money from Anoka county to Hennepin county, because defendant was under a duty to Lambert to take it there and to pay it there to the doctor and hospital. While mere failure to pay over the money, standing alone, was not sufficient to constitute embezzlement (Blake v. State, 12 Okl. Cr. 549, 160 P. 30, L. R. A. 1917B, 1261), if he did not pay it as directed upon demand, it was some evidence of misappropriation which, along with the other circumstances disclosed by the record, tended to prove the crime and that it was committed in Hennepin county. Aside from all this, assuming that there was a misappropriation, as the evidence of the state tended to prove, the evidence was conclusive, to our minds, that the crime was committed in Hennepin county and nowhere else, and that the court would have been justified in so charging. That being so, if it erroneously submitted the question of venue to the jury and erroneously charged the jury as to what it might consider in deciding the question, it was error without prejudice to defendant.

Judgment affirmed and sentence of trial court ordered executed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.