STATE OF MINNESOTA

IN SUPREME COURT

A21-1360

Court of Appeals                                                          Gildea, C.J.

State of Minnesota,

            Respondent,

vs.                                                                      Filed: September 13, 2023
                                                                         Office of Appellate Courts

Raeleen Kay Johnson,

            Appellant.

---

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, Saint Paul, Minnesota, and

Rachel v. Cornelius, Waseca County Attorney, Waseca, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Benjamin J. Butler, Assistant Public Defenders, Saint Paul, Minnesota for appellant.

---

S Y L L A B U S

1.     Because the "informs" element of the offense of falsely reporting a crime, Minn. Stat. § 609.505 (2022), is satisfied when a law enforcement officer receives the false report of a crime, venue for the crime of filing a false report is proper in the place where the officer receives the false report.

2.    Because the circumstantial evidence proved beyond a reasonable doubt that the law enforcement officer received the false report of a crime in Waseca County, the evidence is sufficient to sustain appellant's conviction.

Affirmed.

O P I N I O N

GILDEA, Chief Justice.

This case arises from appellant Raeleen Kay Johnson's false report to police that the father of her child had abused their child.  Based on this report, a Waseca County jury found Johnson guilty of falsely reporting a crime to a police officer in violation of Minn. Stat. § 609.505 (2022).  Because she was in Blue Earth County when she made the report, Johnson alleged on appeal that venue was improper in Waseca County.  In the alternative, Johnson argued that the evidence was not sufficient to support her conviction.  The court of appeals affirmed, and we granted Johnson's petition for review.  Because we conclude that venue is proper in Waseca County and that the evidence was sufficient, we affirm.

**FACTS**

Appellant Raeleen Kay Johnson and her son, who was 8 years old at the time of these events, live in Waseca County.  Her son's father ("Father") also lives in Waseca County.  Johnson and Father had a parenting agreement governing custody of their son. The agreement gave Father primary custody and gave Johnson parenting time on Wednesday evenings and some weekends.  In late August 2020, Johnson declined to return her son to Father's custody for several days.

2

Father contacted the Waseca Police Department on Thursday, August 27, which was when Johnson first failed to return her son as required under the parenting agreement. The Waseca Police Department opened an investigation based on Father's contact.

The following Tuesday, on September 1, Johnson took her son to a hospital in Mankato, in Blue Earth County. Detective Brent Brass of the Waseca Police Department was working the case that day. Brass looked for Johnson at her home, as well as at her parents' home, both in Waseca County. He also called Johnson on her cell phone twice. Johnson initially did not answer the phone, so Brass left voicemail messages both times. Johnson returned Brass's calls late that afternoon. The entirety of the approximately 7-minute phone call between Brass and Johnson took place while Johnson was in the hospital parking lot in Mankato. Johnson stated that she did not want to return her son to Father because she believed that Father was abusing him and that doctors at the emergency room confirmed the abuse. During the call, Brass stated several times that Johnson should come meet him at the Waseca Police Department. Bass testified that he specifically directed Johnson to "come straight to the Waseca Police Department . . . so that [he] could see [her son]." Brass waited for Johnson for at least an hour, but Johnson never arrived at the Waseca Police Department. Later that day, Brass discussed the case with Sergeant Schroeder, who was coming on duty, and stated that Johnson should be taken into custody when police found her.

Mankato police officers arrested Johnson at the Mankato hospital that night. The Waseca County Attorney's Office charged Johnson with filing a false report based on the

report Brass received during the September 1 phone call. The case went to trial in Waseca County, and the jury included only Waseca County residents.

Johnson first raised the issue of venue after the State finished its case. Johnson's attorney moved for a judgment of acquittal on the false reporting charge, arguing that the State failed to prove beyond a reasonable doubt that the alleged offense took place in Waseca County. Defense counsel noted that the pattern jury instruction required the State to prove that the offense took place in Waseca County, and that unlike some offenses, no special statutory provision permits a charge in a county where no element of the offense was committed. The State opposed the motion, arguing that it had proven venue.

The district court denied the motion for judgment of acquittal. The court explained that the State had presented enough evidence for the jury to conclude that the "informs" element of the offense—that the "defendant informed a law enforcement officer that a crime had been committed"—was committed in Waseca County because the evidence supported a finding that Johnson had called a Waseca police officer.

The venue argument came up again in closing arguments. Johnson's attorney emphasized that evidence placed Johnson in Blue Earth County—and not in Waseca County—during the phone call with Brass, and counsel argued that Johnson therefore should be acquitted.

The district court instructed the jury that there are four elements of falsely reporting a crime:

> First, the defendant *informed* a law enforcement officer that a crime had been committed.
> Second, the defendant knew that the report was false.

4

> Third, the defendant intended that the law enforcement officer acted in reliance upon the report.
> And fourth, the defendant's act took place on or about August 27, 2020, through September 1, 2020, *in Waseca County*.

(Emphasis added.) The district court also explained that each element must be proven beyond a reasonable doubt. The jury found Johnson guilty as charged.

Johnson appealed her conviction. On appeal, Johnson argued that no part of the crime occurred in Waseca County because she was in Blue Earth County when she "informed" Brass that a crime had been committed. In the alternative, Johnson argued the circumstances proved supported a reasonable inference that Brass was not in Waseca County when he received the false report, and so the evidence was not sufficient to sustain her conviction.

The court of appeals affirmed Johnson's conviction of falsely reporting a crime. *State v. Johnson*, 979 N.W.2d 483, 489 (Minn. App. 2022). Relying on the venue statute, Minn. Stat. § 627.01 (2022), the court concluded that venue is proper in a county where any element of the offense was committed. *Johnson*, 979 N.W.2d at 498. Next, the court considered whether the "informs" element of Minn. Stat. § 609.505, subd. 1, requires not just the making of a false report of a crime, but also the receipt of the false report by a law enforcement officer. *Id.* at 499. Relying on a dictionary definition of "to inform," the court concluded that "the act of informing under the statute necessarily includes two components—the making of a false report and the receipt of that false report." *Id.* Consequently, the court held that "the plain language of the statute necessarily provides that an element of the offense occurs in both the county where the false report was made

5

*and* the county where the false report was received by the police officer." *Id.* at 500. Having clarified the "informs" element of the offense, the court considered whether the State proved beyond a reasonable doubt that Brass received the false report in Waseca County. *Id.* at 500–01. The court concluded that the "only reasonable hypothesis" that could be drawn from the circumstances proved, as a whole, was that Brass was in Waseca County when he received the false report. *Id.* at 501.

Johnson petitioned for review on the issue of whether the State was required to prove that she was in Waseca County when she made the false report. We granted her petition.

**ANALYSIS**

Johnson raises two issues on appeal. She argues that because she was in Blue Earth County when she made the report at issue, venue for the crime of filing a false report was not proper in Waseca County. She argues in the alternative that even if the location of the police officer who received the report can support the venue element of the crime, her conviction must still be reversed because the State did not prove that Brass was in Waseca County when he received Johnson's report. We consider each question in turn.

I.

Johnson argues that the State failed to meet its burden to show venue in Waseca County because evidence at trial shows that Johnson was in Blue Earth County when she placed the call to Brass.[1] A venue statute governs the place of criminal trials in Minnesota.

---

[1]    The State argues that Johnson forfeited this venue argument under the Minnesota Rules of Criminal Procedure by failing to raise it before trial. The State failed to raise its forfeiture argument to the court of appeals, so the State forfeited its forfeiture argument.

6

*See* Minn. Stat. § 627.01, subd. 1.[2] The statute requires that "every criminal cause shall be tried in the county where the offense was committed," with some exceptions that are not relevant here. *Id.* And the statute defines "[c]ounty where the offense was committed" as "any county where any element of the offense was committed." *Id.*, subd. 2.

For venue to be proper under the statute, the State needed to show that Johnson committed at least one element of the crime of filing a false report in Waseca County.[3] The

_____

*See Steward v. State*, 950 N.W.2d 750, 754 n.4 (Minn. 2020) (holding that State forfeited its argument that the motion should be treated as a post-conviction petition by failing to raise it to the district court); *In re Minnegasco*, 565 N.W.2d 706, 713 (Minn. 1997) (declining to reach issues not raised to the court of appeals).

The State also contends that Johnson forfeited any separate constitutional argument about venue and vicinage. Because Johnson's petition for review did not include a constitutional challenge, Johnson has forfeited the issue. *See McGuire v. Bowlin*, 932 N.W.2d 819, 829 (Minn. 2019) ("Failing to raise an issue both before the court of appeals and in a petition for review forfeits the issue.").

[2] In full, the venue statute states:

Subdivision 1. **Place of trial.** Except as otherwise provided by rule 24 of the Rules of Criminal Procedure, every criminal cause shall be tried in the county where the offense was committed. The defendant shall be entitled to one change of venue only except in cases involving potential prejudicial publicity in accordance with rule 25.02, subdivision 5, of the Rules of Criminal Procedure.

Subd. 2. **County where the offense was committed.** "County where the offense was committed" means any county where any element of the offense was committed or any county where the property involved in an offense is or has been located or where the services involved in an offense were provided.

[3] Because venue is proper in "any county where any element of the offense was committed," venue can be proper in more than one county. Minn. Stat. § 627.01; *see State v. Pierce*, 792 N.W.2d 83, 86 (Minn. App. 2010) (rejecting argument that venue is proper only where an illegal e-mail was sent); *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985) ("It is clear [that when] the acts constituting the crime and the nature of the crime

7

crime of false reporting is committed when a person "informs a law enforcement officer that a crime has been committed . . . knowing that [the report] is false and intending that the officer shall act in reliance upon [the report]." Minn. Stat. § 609.505, subd. 1. The court of appeals relied on the "informs" element in concluding that venue was proper in Waseca County. Specifically, the court of appeals held that a defendant "informs" a law enforcement officer in both the county where the defendant is *and* the county where the officer is, because the word "informs" under the statute includes both the making of the false report and its receipt. *Johnson*, 979 N.W.2d at 498–500.

Johnson argues that the court of appeals misinterpreted the language of the false reporting statute, *see* Minn. Stat. § 609.505, when it held that the "informs" element of falsely reporting a crime requires the receipt of the false report by a law-enforcement officer. In support of her argument, Johnson cites dictionaries that defined "inform" as "to communicate knowledge to" or "to tell."

For its part, the State urges us to affirm. The State cites dictionaries that define "inform" as "give (someone) facts or information." The State also relies on the whole-statute canon, which provides that a statute should be read and construed as a whole so as to harmonize and give effect to all its parts. *See State v. Friese*, 959 N.W.2d 205, 212 (Minn. 2021) (discussing whole-statute canon). According to the State, the court of appeals' interpretation of the word "informs" harmonizes the "informs" element with the

charged implicate more than one location, the constitution does not command a single exclusive venue."). Accordingly, the fact that venue would have been proper in Blue Earth County does not necessarily foreclose prosecution in Waseca County.

8

third element of the crime, which requires an intent that the officer *act in reliance on* the false report.

The parties' arguments present an issue of statutory interpretation and our review is de novo. *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) ("A sufficiency-of-the-evidence claim that turns on the meaning of the statute under which a defendant has been convicted presents a question of statutory interpretation that we review de novo."). Our objective in statutory interpretation is to "effectuate the intent of the legislature." *Id.* (citation omitted) (internal quotation marks omitted). When a phrase in a statute is undefined, we may look to dictionary definitions "to determine the common and ordinary meanings of these terms." *State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). In determining which dictionary definitions apply, we consider the statutory context. *Buzzell v. Walz*, 974 N.W.2d 256, 263 (Minn. 2022).

Some dictionary definitions of "inform" include another party's receipt of the information, *see e.g.*, *Inform*, *Merriam-Webster's Collegiate Dictionary* 641 (11th ed. 2014) (defining "inform" as "to give information (as of another's wrongdoing) to an authority"), and some definitions involve merely making information available, *id.* ("to impart information or knowledge"). *See also Inform*, *Webster's Third New International Dictionary* 1160 (2002) (similar). But the statutory context of the word "informs" resolves the competing dictionary definitions. *See Buzzell*, 974 N.W.2d at 263 (considering statutory context to resolve question of which dictionary definition applies). The language of the statute makes it a crime to inform "*a law enforcement officer*" of false information,

9

with an intent "*that the officer shall act in reliance upon it.*" Minn. Stat. § 609.505, subd. 1 (emphasis added).

Because the language of the statute expressly provides that, to commit this crime, the defendant must inform a specific type of person—a law enforcement officer—it would be inconsistent with the context of the statute to use a definition of "informs" that does not involve the officer's receipt of the information. *See Friese*, 959 N.W.2d at 212. In other words, the plain language of the statute reflects a legislative intent to include, as part of the crime, a police officer's receipt of the false information. Accordingly, we hold that the "informs" element of the falsely-reporting-a-crime statute is satisfied when a law enforcement officer receives the false report of a crime. The State therefore can meet its burden to show venue for the crime by showing that the law enforcement officer was in the county of trial when the officer received the false report.

## II.

Johnson argues, however, that even if we hold that venue can be satisfied based on the location of the officer when the officer receives the report, the evidence is not sufficient to support her conviction. Specifically, she argues that the circumstantial evidence does not "exclusively show" that Brass received the false report of a crime in Waseca County.

Before we begin our analysis of the circumstantial evidence, we acknowledge the parties' dispute regarding the standard of proof required to satisfy the venue requirement. Consistent with existing court of appeals precedent, Johnson argues the standard is proof beyond a reasonable doubt. *See State v. Pierce*, 792 N.W.2d 83, 85 (Minn. App. 2010) (stating that the State must prove venue beyond a reasonable doubt). The State argues the

10

standard is preponderance of the evidence, which is the rule in the federal circuits and a substantial number of states. *See, e.g.*, *United States v. Black Cloud*, 590 F.2d 270, 272 n.2 (8th Cir. 1979); *State v. Allen*, 293 N.W.2d 16, 20 (Iowa 1980); *see also Smith v. United States*, 599 U.S. ___, 143 S.Ct. 1594, 1608–09 (2023) (noting that venue determinations do not resolve the question of criminal culpability because a venue determination does not resolve "some or all of the factual elements of the offense charged" (citation omitted) (internal quotation marks omitted)). Although we have never squarely addressed the standard of proof issue the parties identify,[4] we need not do so here because, as explained below, the circumstantial evidence presented by the State proves beyond a reasonable doubt that Brass was in Waseca County when he received the false report of a crime.

The State relied on only circumstantial evidence to show venue at trial. The first step in our circumstantial evidence review is identifying the circumstances proved. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). In identifying the circumstance proved, we "winnow down the evidence presented at trial to a subset of facts that are consistent with the jury's verdict and disregard evidence that is inconsistent with the jury's verdict." *State v. Allwine*, 963 N.W.2d 178, 186 (Minn. 2021) (citation omitted) (internal quotation marks omitted). Next, we "independently examine the reasonableness of any inferences

---

4       In a few cases, we have assumed without deciding that a beyond a reasonable doubt standard applies. *See State v. Heidelberg*, 12 N.W.2d 781, 782 (Minn. 1944) (concluding that the State *had* proven venue beyond a reasonable doubt); *see also State v. Carignan*, 272 N.W.2d 748, 749 (Minn. 1978) (concluding that evidence was sufficient to establish venue); *State v. New*, 22 Minn. 76, 78–79 (Minn. 1875) (noting that the defendant argued for a jury instruction that included a "beyond a reasonable doubt" burden for venue and concluding that the State proved venue).

that can be drawn from the circumstances proved, *as a whole*, including an inference consistent with rational hypotheses other than guilt." *Id.* (emphasis added).

Here, the circumstances proved are as follows. Brass is a Waseca police officer. On September 1, 2020—the date of the phone call—Brass was actively investigating whether Johnson was depriving Father of his custodial rights. His investigation led him to Johnson's apartment in the City of Waseca, and then to her parents' apartment, which is also in Waseca County. Brass left Johnson a voicemail message telling her that she needed to come to the Waseca Police Department by 3:00 p.m. that day. Johnson did not comply. Rather, at 4:09 p.m., Johnson called Brass from Mankato, which Brass knew was approximately 30 minutes from the Waseca Police Department. During the recorded call with Johnson, Brass repeatedly asked Johnson to come to the Waseca Police Department with her son. More specifically, Bass testified that he told Johnson, to "*come* straight to the Waseca Police Department" and to "*come* straight *to us* so that *I could see* [your son]."[5] (Emphasis added.) Radio chatter can be heard in the background of the phone call recording. Brass waited for Johnson for over an hour, but Johnson and her son never came to the police department. At that point, Brass left Johnson another voicemail message,

---

[5] Johnson correctly notes that Brass did not say to come straight *here* to the police department. But the absence of the word "here" does not change the colloquial meaning of "come straight to us"; that phrase suggests that Brass was at the Waseca Police Department during the call. *Cf. State v. Cantieny*, 24 N.W. 458, 459 (Minn. 1885) (concluding that witnesses identified the location of the crime sufficiently, "although somewhat indirectly").

pinged her phone and later discussed the case with the next supervisor on duty, Sergeant Schroeder.

Independently examining the reasonableness of any inferences that can be drawn from the circumstances proved, we conclude that the only inference that can be reasonably drawn from the circumstances proved, *as a whole*, is that Brass was in Waseca County when he received the false report.

Johnson's argument to the contrary is unavailing because it fails to consider the circumstances proved as a whole.[6]  Instead, Johnson focuses on only two of the circumstances proved: (1) Brass knew that Johnson was 30 minutes away from the Waseca Police Department, and (2) indiscernible police radio chatter can be heard in the background of the phone call recording.  According to Johnson, these two circumstances support an inference that when Brass told Johnson to bring her son to the Waseca Police Department so Brass "could see [him]," Brass was also away from the Waseca Police Department and at a location outside Waseca County.  Johnson asserts that the radio dispatch noises in the background could mean that "Detective Brass was in a car talking on his cell phone."  In other words, Johnson contends that because Brass knew that Johnson was 30 minutes away from the police station, one inference we can draw is that when Brass

---

[6]     Johnson correctly noted at oral argument that it would have been easier for the State to ask Brass directly whether he was in Waseca County when he received the call.  We urge prosecutors to establish venue through direct testimony.  But we cannot make any inferences about Brass's location based on the State's failure to ask a question, and "[v]enue may be proved by indirect evidence."  *State v. Trezona*, 176 N.W.2d 95, 96 (Minn. 1970) (collecting cases).

13

told Johnson to meet at the police station, Brass might have been somewhere within a 30-minute drive of the station, including areas outside Waseca County.

We disagree. In light of *all* of the circumstances proved, the only reasonable inference is that Brass was in Waseca County when Johnson called him. Specifically, Brass worked for the Waseca Police Department; Brass was working the case in Waseca County before the call; during the call, he told Johnson to come straight to the Waseca Police Department so that he could see her son; then after the call, he waited for Johnson for over an hour, and when Johnson still had not shown up at the police department after an hour, Brass involved the next supervisor on duty. Further, while radio dispatch noises could come from a squad car (as Johnson observes) or they could come from the police station, one inference we can definitively draw from the radio dispatch noises in the background of the call is that Brass was working his job as a Waseca police detective at the time of the call. And the fact that Brass knew that Johnson was 30 minutes away from the police station—standing alone—does not support a reasonable inference that Brass himself was outside Waseca County. There is no evidence that Brass left the county during his investigation. And while Johnson's alternative explanation is theoretically possible— perhaps Brass drove his car to another county for some other reason while doing his work as a Waseca County police officer—we conclude that it is not a reasonable inference to draw. *See State v. Tscheu*, 758 N.W.2d 849, 860–61 (Minn. 2008) (acknowledging that defendant's alternative theory was "theoretically possible" but rejecting the argument and upholding the conviction because there was "no physical evidence in the record to provide reasonable support for this hypothesis").

14

Rather, the only reasonable inference from our consideration of the circumstances proved as a whole is that Brass was in Waseca County when he spoke to Johnson. It is simply not reasonable on this record to infer that Brass was anywhere other than Waseca County when the call took place. *See State v. Boldman*, 813 N.W.2d 102, 108 (Minn. 2012) ("[C]ircumstances must be evaluated as a part of the whole evidentiary picture."). Accordingly, we hold that the circumstantial evidence presented by the State proved beyond a reasonable doubt that Brass received the false report of a crime in Waseca County.[7]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

---

[7] *See State v. New*, 22 Minn. 76, 79 (Minn. 1875) (concluding that the State met its burden to show venue for embezzlement by showing that embezzled money was received in the county and an absence of evidence that the defendant moved the money out of the county); *State v. McReady*, 191 N.W. 816, 816 (Minn. 1923) (holding that venue was sufficiently established in Anoka County for crime of taking indecent liberties when the record shows that the victim lived and studied in Fridley, the crime was committed near the victim's home, the defendant and several witnesses lived in Fridley, and the defendant's testimony showed that Fridley is in Anoka County); *State v. Frost*, 200 N.W. 295, 295 (Minn. 1924) (holding that State met its burden to show venue for illegal sale of alcohol by inference when testimony established that sales were made at defendant's store and the defendant testified that the store was in a city that was in the county).