**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-0054**

State of Minnesota,
Respondent,

vs.

Devon Griffin Seivers,
Appellant.

**Filed January 29, 2024
Affirmed
Ross, Judge**

Stearns County District Court
File No. 73-CR-21-3355

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Paul J. Maravigli, Special Assistant Public Defender, Minneapolis, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Schmidt, Judge.

## SYLLABUS

The residence of a runaway child's custodial parent rather than the place the child intends to reside determines venue under Minnesota Statutes section 627.15 (2020) for prosecuting a criminal action for alleged abuse of a child, including criminal sexual conduct.

**OPINION**

**ROSS**, Judge

A Stearns County jury found appellant Devon Seivers guilty of third-degree criminal sexual conduct based on evidence that he met a 14-year-old girl on Facebook and sexually assaulted her after she ran away from her mother's Stearns County home. Seivers challenges his conviction on three grounds. He contends first that the state failed to prove the element of venue because the child's act of running away defeated venue in Stearns County. He contends second that the state committed a *Brady* violation by withholding two child-protection orders regarding the victim. And he contends third that the district court violated his right to a fair trial by denying his request for advisory counsel. We hold that Seivers's venue challenge fails because the child's custodial parent's residence, not the runaway child's intent to reside elsewhere, determines venue. His *Brady* challenge fails because the child-protection orders were immaterial and therefore not favorable to his defense. And his fair-trial challenge fails because the district court acted within its discretion by denying his request for advisory counsel. We therefore affirm.

**FACTS**

Thirty-eight-year-old Devon Seivers met a 14-year-old girl in November 2020 on Facebook and began grooming her for a sexual relationship. The girl had been living with her mother in her mother's Stearns County house for about five years. She had occasionally run away but returned home, where she had a bedroom and all her belongings. Seivers communicated with the child through instant messaging and phone calls, claiming he was

24 years old and engaging her in coarse sexual conversation. About two months after Seivers first met the girl online, she ran away again to her friend's house in Benton County.

Seivers arranged to meet the girl in person. He drove to her friend's house at night on January 24, 2021, and he picked up both children. He drove them around, smoking marijuana, until he reached La Quinta Inn in Brooklyn Park. Seivers rented a two-bed hotel room. Seivers and the girl he had been sexually grooming occupied one bed, and her friend stayed in the other. Seivers engaged in sexual intercourse with the girl. The next morning, he drove the two children back to the friend's home in Benton County. The girl told her friend that "she wanted to go get a pregnancy test . . . and that her [vagina] was sore." She sent a Facebook message asking Seivers, "Did u [ejaculate] inside of me?" Seivers responded: "I was pulling out[.] [M]y bad."

The girl's mother had been trying to locate her daughter since she disappeared from home. She notified child-protection workers, who secured an *ex parte* emergency protective-care order from juvenile court in Stearns County on January 20. She logged into her daughter's Facebook account and found the sexually explicit messages with Seivers. She notified the girl's social worker, who forwarded the messages to police. Police located the girl and picked her up from her friend's house on January 27.

A social worker reported to police on January 29 that the girl had been sexually abused. The juvenile court held an emergency protective-care hearing that same day. It ordered the temporary transfer of physical and legal custody to Stearns County Human Services.

The state then charged Seivers with third-degree criminal sexual conduct (victim between the ages of 13 and 15 and the offender more than 24 months older) in Stearns County District Court. Seivers told the district court during a status hearing that he intended to discharge his public defender. He also asserted that the prosecutor had not fulfilled the state's duty to disclose *Brady* material and that he sought all material the state possessed. And he asked the district court to appoint advisory counsel to help him file motions while stating that he refused to waive his right to a speedy trial to allow time for any advisory counsel to prepare. The district court refused Seivers's request to appoint advisory counsel. Seivers therefore kept his public defender and did not waive his right to counsel. But five days before trial, Seivers again announced that he intended to discharge his public defender. The district court found that Seivers knowingly, intelligently, and voluntarily waived his right to counsel. Seivers again asked the district court to appoint advisory counsel. The district court denied his request, finding that it was impossible both to afford advisory counsel sufficient time to prepare and to honor Seivers's asserted right to a speedy trial.

Immediately before the parties began questioning potential jurors for jury selection, Seivers objected to having not received the girl's child-protection records. The district court informed Seivers that he could not obtain these confidential child-protection records without having first made a *Paradee* motion, which he should have made long before trial.

Seivers represented himself at trial without counsel. The prosecutor and the district court occasionally helped him navigate trial procedures. For example, when Seivers told the jury about his "44-page criminal history," the district court stopped the trial and

cautioned Seivers outside the presence of the jury, "I cannot in good conscience allow you to continue going into and delving into your criminal history, especially with such significant descriptions in terms of the drugs that you may or were convicted of possessing or selling." The prosecutor repeatedly helped Seivers admit exhibits into evidence. The jury found Seivers guilty of third-degree criminal sexual conduct, and the district court convicted him accordingly.

Seivers obtained the child-protection records after trial, covering the period from January 20 to 29, and he filed a notice of appeal. Because the child-protection records were not part of the district court's record and therefore not properly before this court in this appeal, we granted Seivers's motion to stay the appeal to pursue postconviction relief. Seivers petitioned for postconviction relief on three grounds, arguing that venue was improper in Stearns County, that the state failed to prove the venue element, and that the prosecutor committed a *Brady* violation by failing to disclose the child-protection records. The district court denied Seivers's petition. We granted Seivers's motion to dissolve the stay, and we now decide the issues he raises in this appeal.

## ISSUES

I.     Did the state offer sufficient evidence of venue?

II.    Did the state's failure to disclose the child-protection orders implicate Seivers's rights under *Brady*?

III.    Did the district court act within its discretion by declining to appoint advisory counsel?

5

## ANALYSIS

Seivers challenges his conviction on three grounds. He contends first that the state failed to prove the element of venue because the child's act of running away defeated venue in Stearns County. He contends second that the state engaged in a *Brady* violation by withholding child-protection orders regarding the child. And he contends third that the district court violated his right to a fair trial by denying his request for advisory counsel. We address each contention in turn.

### I

Seivers contends that the evidence was insufficient to sustain his conviction of third-degree criminal sexual conduct. He does not question the sufficiency of the evidence on the culpability elements of the crime, which involves an offender who is more than 24 months older than the victim and who engages in sexual penetration of a 14- or 15-year-old child. Minn. Stat. § 609.344, subd. 1(b) (2020). Seivers instead questions only whether the state proved venue, which the supreme court has implied the state must prove beyond a reasonable doubt. *See State v. Heidelberg*, 12 N.W.2d 781, 782 (Minn. 1944) (holding that the state had proven venue beyond a reasonable doubt); *see also State v. Johnson*, 995 N.W.2d 155, 161 (Minn. 2023) (observing that the supreme court has never "squarely addressed the standard of proof" required to satisfy the venue requirement). Because Seivers initially filed a direct appeal and then moved for a stay to pursue postconviction relief, we review his sufficiency-of-the-evidence challenge using the same standard we apply on direct appeal. *See State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). Seivers's challenge turns on interpreting Minnesota Statutes section 627.15, calling for our *de novo*

6

review. *See State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018) (reviewing an appellant's sufficiency-of-the-evidence argument *de novo* because it turned on a question of statutory interpretation). For the following reasons, our *de novo* review leads us to affirm.

Seivers argues specifically that the state failed to prove the venue element because the child no longer resided in Stearns County either at the time Seivers sexually abused her or when the state discovered the abuse. The venue requirement arises from the constitution, under which an accused generally has the right to be tried "by an impartial jury of the county or district wherein the crime shall have been committed." Minn. Const. art. I, § 6. Minnesota Statutes section 627.01, subdivision 1 (2020), likewise provides that "every criminal cause shall be tried in the county where the offense was committed," except when the Minnesota Rules of Criminal Procedure provide otherwise. We have interpreted this codified constitutional right as making venue "an essential element of every criminal offense" and requiring the state to prove beyond a reasonable doubt that the charged offense "was committed in the county where the case is being tried." *State v. Pierce*, 192 N.W.2d 83, 85 (Minn. App. 2010) (citing Minn. Stat. § 627.01, subd. 1 (2008)).

The legislature, however, may enact special venue statutes within that constitutional framework. *State v. Krejci*, 458 N.W.2d 407, 411 (Minn. 1990). The legislature did so as it regards the offense charged in this case; in criminal actions arising from alleged child abuse, the crime "may be prosecuted either in the county where the alleged abuse occurred or the county where the child is found." Minn. Stat. § 627.15. The state charged Seivers

with third-degree criminal sexual conduct in Stearns County District Court. We therefore must first determine whether Seivers's charged offense constitutes "child abuse."

It is clear that his charged offense does constitute child abuse as it regards the special venue statute. That statute does not define child abuse, but Minnesota Statutes section 260C.007, subdivision 5 (2020), does, and the definition includes third-degree criminal sexual conduct. Minnesota's third-degree assault and first-degree murder statutes similarly include third-degree criminal sexual conduct in the definition of "child abuse." *See* Minn. Stat. § 609.185(d) (2020); Minn. Stat. § 609.223, subd. 2 (2020) (adopting section 609.185(d)'s definition of child abuse). We conclude that third-degree criminal sexual conduct meets the definition of child abuse as it bears on determining venue. In choosing to prosecute Seivers in Stearns County under the special child-abuse venue statute, the state therefore bore the burden to prove beyond a reasonable doubt that the child was found in Stearns County. *See id.*; *Pierce*, 192 N.W.2d at 85. We next address whether the child was "found" there.

We have already determined that a child "is found," among other potential places, where she resides. *State v. Larson*, 520 N.W.2d 456, 460 (Minn. App. 1994), *rev. denied* (Minn. Oct. 14, 1994); *see also State v. Rucker*, 752 N.W.2d 538, 547 (Minn. App. 2008), *rev. denied* (Minn. Sept. 23, 2008) (holding that a child is found in the county where the child resided either when the abuse occurred or when the abuse was discovered). We focus here on where the child resided at the time Seivers sexually abused her or at the time the sexual abuse was discovered.

We are satisfied that venue was proper in Stearns County, where the child resided with her mother both at the time Seivers abused her and at the time child-protection workers and police discovered the abuse. Although no Minnesota court has defined a child's residence when determining venue under Minnesota Statutes section 627.15, caselaw confirms the self-evident impression that a child's residence is generally determined by the custodial parent or parents. The supreme court has announced, "A child's domicile follows that of the parent to whom custody has been given." *Ray v. Ray*, 217 N.W.2d 492, 493 (Minn. 1974). Because the child resided with her mother in Stearns County, Stearns County was a proper venue for prosecution.

Seivers unconvincingly emphasizes the child's runaway status and her alleged intention to reside somewhere other than her mother's Stearns County home. As a threshold matter, Seivers's argument rests largely on conjecture. He implicitly asks us to infer that, because the child ran away from home, she must have no longer intended to reside with her mother in Stearns County and instead intended to reside with her friend in Benton County. This is a stretch, in addition to being irrelevant. The child frequently ran away from home only to return. Seivers points to no direct evidence of the child's supposed intent to reside (rather than temporarily stay) at her friend's home, and the jury certainly made no finding supporting the argument. But the argument fails even if Seivers correctly interprets the circumstances. We conclude that the child's supposed intent to live elsewhere cannot shield Seivers from prosecution and conviction. A runaway child has, by definition, only temporarily departed from her lawful residence, because a "[r]unaway" is a child "who is absent from the home of a parent or other lawful placement without the consent of the

9

parent, guardian, or lawful custodian." Minn. Stat. § 260C.007, subd. 28 (2022). A runaway might hope to live somewhere other than home, and she might even intend earnestly to do so. But as a minor under her mother's parental authority, she has no lawful right to supplant her mother's residential decision with her own. The residence of a runaway child's custodial parent rather than the child's intended residence therefore determines venue under Minnesota Statutes section 627.15 for prosecuting a criminal action for alleged child abuse, which includes criminal sexual conduct committed against a minor victim. Because the evidence informs us that the child's mother never consented to the child changing her residence from Stearns County, venue was proper there.

We are not persuaded toward a different understanding of residence by Seivers's reliance on the supreme court's decision in *Christensen v. Healey*, 913 N.W.2d 437 (Minn. 2018). The *Christensen* court addressed a parenting-time dispute in which the parties disagreed about whether the endangerment standard in Minnesota Statutes section 518.18(d)(iv) (2016), or the best-interests-of-the-child standard in Minnesota Statutes section 518.175, subd. 5(b) (2016) applied. 913 N.W.2d at 440–41. It turned to the definition of "physical custody and residence," which is "the routine daily care and control and residence of the child." *Id.* (citing Minn. Stat. § 518.003, subd. 3(c) (2016)). The *Christensen* court held that, because the father's motion to increase parenting time affected the mother's daily control and care of the child, granting the motion would modify the parties' custody agreement, and the motion therefore could succeed only if the father met the endangerment standard. *Id.* at 442. We read nothing in the supreme court's reasoning or its reliance on the definition of "physical custody and residence" to suggest that a

10

parent's custody is severed by a child's briefly running away to another household. Physical custody and residence are instead necessarily intertwined, affording the parent with physical custody the authority to provide daily care and control of the child. *See Wolf v. Oestreich*, 956 N.W.2d 248, 254 (Minn. App. 2021) ("The principal location where a child resides relates to physical custody, which involves the 'routine daily care and control' of that child." (quoting Minn. Stat. § 518.003, subd. 3(c) (2018))), *rev. denied* (Minn. May 18, 2021). The *Christensen* analysis and holding do not alter our decision regarding a child's residence and venue for prosecution for child abuse.

We add that we can imagine circumstances in which Seivers's theory that a runaway child's intent determines her residence could leave venue undiscernible. This would occur, for example, if a child living with his Minnesota parent runs away intending to live with a friend in Wisconsin but is abducted on the way, assaulted in an unknown Minnesota county, and then dropped off in Wisconsin where he reports the crime. Under Seivers's theory, venue would not lie in the county of the parent's residence, because the child did not intend to live there at the time of the offense; venue would not lie in the county where the crime was discovered or reported, because it was reported outside the state; and venue cannot practically lie in the county where the crime occurred because the child does not know where that is. We are confident that the legislature intended the venue statute to cover all circumstances.

Our holding that the prosecution was properly venued in Stearns County also stands firm in the face of Seivers's alternative contention that the January 20 child-protection order severed the mother's custody and ended the child's residence in Stearns County.

11

Seivers overemphasizes the impact of the order as it bears on residence. A juvenile court may issue an *ex parte* order for emergency protective care if it finds that reasonable grounds exist to believe that the child is endangered by her surroundings or conditions. Minn. R. Juv. Prot. P. 40.01 (citing Minn. Stat. § 260C.151, subd. 6 (2022)). A resulting emergency order is temporary, effective only until the juvenile court holds a protective-care hearing. *See* Minn. R. Juv. Prot. P. 41.01, subd. 1(b) (prohibiting the state from holding a child in emergency protective care for more than 72 hours without a hearing and an order for continued protective care). At that hearing, the juvenile court determines whether the child should be returned to home or placed in protective care. *See* Minn. R. Juv. Prot. P. 41.01, subds. 1, 2(a). Because the January 20 *ex parte* order was merely a temporary grant of custody to Stearns County pending a hearing, Seivers's argument fails. The child's mother retained legal and physical custody on January 24 when the sexual assault occurred and on January 29 when it was discovered and reported. The *ex parte* order therefore does not invalidate venue in Stearns County.

Having established that a child's intent does not determine residence as to venue in child-abuse cases and that the home of the custodial parent (or parents) does, we easily resolve Seivers's evidence-insufficiency claim. We resolve insufficient-evidence claims by exploring the record to determine whether the facts and their inferences would permit the jury to find the defendant guilty beyond a reasonable doubt. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). We view the evidence in the light most favorable to the verdict and assume the jury disbelieved contrary evidence. *Id.* The child's mother testified that they lived together in Stearns County. Because the direct evidence of the child's

residence at her mother's home permitted the jury to find that she resided in Stearns County when Seivers assaulted her, the evidence was sufficient to prove venue.

## II

We are also satisfied that the postconviction court properly rejected Seivers's argument that the state's failure to disclose the child's juvenile-protection orders violated his right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963). A prosecutor violates a criminal defendant's right to due process by suppressing material evidence favorable to the defendant. *Brady*, 373 U.S. at 87. Seivers could establish that the state violated his right to receive evidence under *Brady* only if he establishes three elements: (1) that the undisclosed evidence was favorable to Seivers because it was either exculpatory or impeaching; (2) that the evidence was either intentionally or unintentionally suppressed by the prosecutor; and (3) that the absence of the evidence prejudiced his defense. *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010). Seivers contends that the child-protection orders were material because they contradicted the state's assertion that the child resided in Stearns County when Seivers assaulted her. The contention fails because, for the reasons we have just explained, the *ex parte* child-protection order temporarily interrupting the mother's custody of the child did not invalidate venue in Stearns County. There is therefore no reasonable probability that the state's disclosure of the child-protection orders would have resulted in a different outcome at trial. The evidence was not material, and Seivers's *Brady* challenge fails.

## III

Seivers contends finally that the district court deprived him of a fair trial by refusing to appoint him advisory counsel. A district court may appoint advisory counsel to assist an unrepresented defendant because either the court is concerned with the fairness of the process or because of concerns about potential delays in completing the trial. Minn. R. Crim. P. 5.04, subd. 2. But a self-represented defendant has no constitutional right to advisory counsel. *State v. Clark*, 722 N.W.2d 460, 466 (Minn. 2006). We review a district court's decision declining to appoint advisory counsel for an abuse of discretion. *State v. Gunderson*, 812 N.W.2d 156, 163–64 (Minn. App. 2012); *see also* Minn. R. Crim. P. 5.04, subd. 2 (stating that a district court "*may* appoint advisory counsel to assist a defendant" (emphasis added)). The district court's decision not to appoint advisory counsel fell within its discretion here. Seivers discharged his public defender and requested advisory counsel only five days before trial while refusing to forgo his right to a speedy trial to allow for a continuance so that any advisory counsel could prepare to effectively advise or assist him. Left with no ability both to vindicate Seivers's right to a speedy trial and to assign him counsel with sufficient time to prepare, the district court applied its discretion rationally by declining Seivers's request for advisory counsel and honoring his request to maintain the trial schedule.

## DECISION

The state presented sufficient evidence to prove the residence of the runaway child's custodial parent, rather than the child's intended residence, to establish proper venue under Minnesota Statutes section 627.15. And Seivers fails to convince us to reverse his

conviction based on his *Brady* challenge or his contention that the district court was required to appoint advisory counsel for him.

**Affirmed.**